96    161
102    99

WILLIAM WELLS, Applt. from the decree of Judge of Probate.

Cumberland.    Opinion January 31, 1902.

*Will. Sanity. Evidence. Undue Influence. R. S., c. 103, § 14.*

In order to establish a will it is not necessary that any of the subscribing witnesses should testify to the sanity of the testator. It frequently happens that the most satisfactory evidence of a person's state of mind is found in the mind's own action, as shown by his conversation, claims, declarations, and acts.

On the question of undue influence, the fact that the testatrix's nephew, who drew the will, was named an executor, and received a small legacy, is entitled to little weight, where the legacy is the same as that bequeathed to all her other nephews and nieces, and there is no evidence that he unjustly used the confidence reposed in him to influence or morally coerce the testatrix, but there is an entire absence of those suspicious circumstances which are usually found where one seeks to impose one's will upon another and overpower his mind and will, so that he is no longer left free to act intelligently and understandingly.

Motion for new trial.    Sustained.

Appeal from the decree of the Judge of Probate of Cumberland county allowing the will of Frances H. M. Wells, late of Portland.

At the trial in the court below, the jury found the testatrix was not of sound mind, and executed the will under undue influence.

The case is stated in the opinion.

*J. C. & F. H. Cobb,* for appellant.

*E. C. Reynolds,* for appellee.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

POWERS, J.    This is an appeal from a decree of a judge of probate approving and allowing the will of Frances H. M. Wells. At the hearing in the appellate court two issues were submitted to the jury by the presiding justice, viz:

Question. Was the testatrix, Frances H. M. Wells, of sound

mind at the time she executed the instrument which purports to be her last will and testament? Answer. No.

Question. Was said testatrix induced to make and execute said instrument, purporting to be her last will and testament, by undue influence? Answer. No.

Whereupon the appellee moved to have the verdict set aside and a new trial granted.

An examination of the evidence satisfies us of the following facts. The testatrix and the appellant had been married something over twenty years. The first half of their married life had been pleasant, but about 1890 the testatrix became convinced, whether with or without sufficient grounds is immaterial, that her husband had formed an undue and unlawful intimacy with another woman. This conviction caused her a great deal of unhappiness. She at one time entertained the thought of obtaining a divorce, but after talking the matter over with her counsel, said that she would remain in the house—it was her home, and she would remain in the house, and the other woman should not come to the house while she was there. She frequently spoke of the affair to her counsel, and stated that she did not intend for her husband to have any considerable portion of her estate. On June 16, 1900, she was taken sick; the 19th she told her nephew, who had been her attorney since 1887, that she would like to have him prepare a will for her. At the same time she told him something as to the amount of her estate, where to find her bank books, to get them and take them to the city and get them balanced up, asked him to figure up her notes, and told him about her other property. On the following day, June 20th, having ascertained the amount of her property, she stated to him what disposition she desired to make of it. Her sister visited her the 23rd and remained with her until the 25th; and during this time she conversed rationally and intelligently about herself and her condition. The 24th the draft of the will was read to her, and she suggested some changes in it so that the share of her estate which was given to one of her brothers, who had had some financial difficulty, should not be subjected to the claims of his creditors. On June 26th, her nephew returned with the will in its final draft, read it to her, and she looked

it over and pronounced it all right. It was drawn in accordance with her instructions. By it she gave the bulk of her property to her heirs at law, her seven brothers and sisters, she being childless, one hundred dollars to each of her thirteen nephews and nieces, $100 to a lady friend stopping at the house at the time, her wearing apparel to her sister, her sewing machine to her sister-in-law, her watch to her husband's grandchild, and the remainder, some $400.00, to her husband.

Having looked the draft of the will over she stated whom she desired as witnesses, two of the neighbors and the nurse, and it was then duly executed and published as her last will and testament.

From that time until her death on July 17th, she continued to have callers and visitors, with whom she conversed in a manner which indicated that she had sufficient mind and memory to recall what she had done, what property she had, and to understand her relations to those who were the natural objects of her affection and bounty. The two neighbors who witnessed the will gave no opinion as to the mental condition of the testatrix, but stated that she signed the will, and when asked if that was her will, and whether she desired them and the nurse to witness it, she nodded her head in assent.

The case of the appellant rests almost entirely upon the testimony of the nurse. She attended the testatrix from June 18th to the time of her death, and states that during that entire time the testatrix was out of her mind, and wandering all the time, that she was flighty and would not answer, that she would get out on the floor at night, that she was hard to manage, that she would say all kinds of things, and imagine she was going and coming somewhere, that she would receive company, and that the day the will was made she was out of her mind all that day and that evening, and the night before. This witness, however, gives numerous instances of conversation between herself and the testatrix wherein the latter conversed intelligently about herself, her husband, her property, and various other matters, and wherein it is impossible to discover any indication of mental unsoundness. She further states that at the time the will was executed, when asked if she knew what was in it, the testatrix bowed her head; that the witness at that time picked up from the floor the envelope that belonged to the bank book and asked the testatrix if it was

any use, to which she replied, "It is the cover to the bank book." These are intelligent acts and statements at the very time of the execution of the will. The testimony in regard to them comes from the nurse herself, and does not comport with her opinion that the testatrix was out of her mind all that day. Moreover, this witness in some of her testimony shows a manifest bias, an inclination to volunteer and inject statements favorable to the appellant, and in other parts her evidence is discredited and overborne by the testimony of the opposing witness and the probabilities of the case.

The weight and value of a witness' opinion depends not only upon his means of observation and knowledge, but also quite as much upon his freedom from all bias and prejudice. In order to establish a will it is not necessary that any of the subscribing witnesses should testify to the sanity of the testator. While there is no presumption of sanity in these cases, and this is a fact to be affirmatively proved by the proponent, yet the opinion of these non-experts is allowed as an aid and not as an infallible guide to the jury. It frequently happens that the most satisfactory evidence of a person's real state of mind is to be gathered from the mind's own action as shown by his conversation, claims, declarations, and acts. Proven facts of this class carry greater weight than the opinion of witnesses. *Cilley* v. *Cilley*, 34 Maine, 162. It is a significant fact that the husband, the appellant, dwelling in the same house as the testatrix and in daily communication with her, testifies to no word or act of hers which can possibly afford any indication of mental unsoundness.

It does not require the highest kind of mental ability to make a valid will. A sound disposing mind exists when the testator can recall the general nature, condition and extent of his property, and his relations to those to whom he gives as well as those from whom he withholds his bounty. *Hall* v. *Perry*, 87 Maine, 569, 47 Am. St. Rep. 352. Neither in the present case is there any impeachment of the testatrix's testimentary capacity through the internal evidence afforded by the will itself. The bulk of her estate was given to her heirs at law and those who, from the claims of blood or affection, would be the natural objects of her bounty, with the exception of her husband. As to him, the will was in accord with a purpose she had

long cherished and frequently expressed, the motive for which plainly appears and is not difficult to understand. Our conclusion is that the finding of the jury upon the first question was plainly contrary to the evidence.

On the second question the burden was upon the appellant to establish undue influence. There was absolutely no evidence, either direct or circumstantial, to support the finding of the jury on this issue. The appellant relies upon the fact that the attorney who drew the will is named as executor, and received a legacy of $100.00, a relatively small portion of the estate. That circumstance is entitled to little weight under the circumstances of this particular case. *Post* v. *Mason*, 91 N. Y. 539, 43 Am. Rep. 689. He was her nephew, and received under the will the same sum as all other nephews and nieces of the testatrix. He had been her attorney for years. There is no evidence that he unfairly used the confidence reposed in him to influence or morally coerce the testatrix. She took the initiative in the preparation of the will, and it was drawn in accordance with the intelligent instructions which she had given. There was no secrecy attending its execution, and from beginning to end there is an entire absence of those suspicious circumstances which are usually found when one seeks to impose one's will upon another and overpower his mind and will, so that his mind is no longer left free to act intelligently and understandingly.

*Motion sustained.*
*New trial granted.*