ERNEST L. RICHARDSON, Admr.,

*vs.*

THE TRAVELERS INSURANCE COMPANY.

Penobscot.     Opinion April 8, 1912.

*Contracts.  Validity.  Mental  Capacity.  Burden  of  Proof.  Evidence.*

In an action to recover back money paid by the plaintiff's decedent for the purchase of a life annuity contract, on the ground that the decedent was not legally competent to make a valid contract, *held* that the burden was on the plaintiff to show that the decedent was mentally incapable of contracting.

On an issue as to one's mental capacity to contract, mere intellectual feebleness must be distinguished from unsoundness of mind, since one incapacitated by age or impairment of mental faculties may be capable of forming a rational judgment as to a particular transaction.

In an action to avoid a contract by plaintiff's decedent for the purchase of a life annuity, evidence *held* insufficient to show that decedent was mentally incapable of contracting.

On report.  Judgment for defendant.

Money had and received.  The declaration in the plaintiff's writ is as follows:  "In a plea of the case, for that the said The Travelers Insurance Company at said Bangor, on the sixth day of July, A. D. 1908, was indebted to the said Joel Richardson, in his lifetime, in the sum of one thousand one hundred and forty-eight dollars, for so much money before that time had and received by the said The Travelers Insurance Company for the use of the said Joel Richardson, and in consideration thereof, then and there promised the said Joel Richardson to pay him the same on demand; yet, though requested, the said The Travelers Insurance Company never paid the same to the said Joel Richardson in his lifetime, nor since the decease of the said Joel Richardson to the plaintiff, but

neglects and refuses so to do, to the damage of said plaintiff, in his said capacity of administrator, as he says, the sum of two thousand dollars, which shall then and there be made to appear, with other due damages."

Plea, the general issue. At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Charles J. Dunn,* for plaintiff.

*George E. Thompson,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

WHITEHOUSE, C. J. This is an action of assumpsit brought by the plaintiff as administrator of the estate of his father, Joel Richardson, to recover the sum of $1148 paid by the intestate to the agents of the defendant company on the 2nd day of July, 1908, for the purchase of a life annuity contract in which the defendant company promised to pay the annuitant the sum of $200 on the 6th day of July in each and every year during his life, the first payment to be made on the 6th day of July 1909. At the time of the execution of this contract the annuitant was 78 years of age, and it is not in controversy that he died on the eleventh day of October, 1908, from senile dementia. The plaintiff seeks to avoid the contract and to recover the amount paid to the defendant company, on the ground that at the time of the purchase of the annuity on the 2nd day of July, 1908, the intestate was not legally competent to make a valid contract. On the other hand while not controverting the proposition that the annuitant Joel Richardson had for several years shown symptoms of arterio-sclerosis, the defendant contends that although the powers of his mind may have been weakened or impaired by old age and bodily disease, he yet possessed sufficient mental capacity on that day to "transact business with intelligence and an intelligent understanding of what he was doing."

The burden is upon the plaintiff, who seeks to avoid the contract, to show that on the second day of July, 1908, the annuitant did not possess a sound mind in a legal sense, so as to be capable of acting rationally and reasoning intelligently with respect to the particular

transaction under consideration; that he did not have sufficient mind and memory to enable him to transact common and simple kinds of business with that intelligence which belongs to the weakest class of sound minds; that he did not have active memory enough to bring to his mind the nature and particulars of the business to be transacted, and mental power enough to appreciate them, to hold them in mind a sufficient length of time to perceive their obvious relations to each other and to form a rational judgment in relation to them. *Hall* v. *Perry,* 87 Maine, 569; Chandler Will Case, 102 Maine, 72. But mere intellectual feebleness must be distinguished from unsoundness of mind. A person may be incapacitated by age or the impairment of certain faculties of the mind from engaging in complex and intricate business and yet be capable of forming a rational judgment in relation to the disposition of a single item of property or the execution of a plain and simple contract; and so one suffering from degeneration of the arteries may have periods of mental confusion of short duration, and yet have lucid intervals between such attacks when he is apparently normal and is capable of transacting business with an intelligent understanding of what he is doing. Chandler Will Case, 102 Maine, supra.

In applying these familiar principles to the case at bar it is important to consider the situation and circumstances of the annuitant, his manner of life, the nature and extent of his property, his conduct on the day of the purchase of the annuity and the significance of all the evidence tending to show the reasonableness or unreasonableness of the transaction itself. He was a resident of the town of Newport, was a successful farmer and competent land surveyor, and a man of more than ordinary general intelligence. He had been acustomed to participate in the discussions at the Grange meetings and at the annual town meetings, contributed to the agricultural papers and had nearly completed a history of the town of Newport. His farm comprised 150 acres of land, and after the death of his wife in 1886, he employed help in the house and on the farm, and during the last five or six years of his life, took his meals at a near neighbor's. The plaintiff, his only child, had left the old homestead 34 years before his father died, and had a wife and several children. In 1907 his father made an arrangement with one of his grandsons, Fred J. Richardson, to come there

with his wife and carry on the place "at the halves;" but this proved unsatisfactory and was terminated at the close of that season. A new proposition made by the grandson to accept a deed of the farm and give his grandfather a mortgage for his support, was promptly rejected by the latter. But in addition to his farm property, he appears to have had on deposit, before the purchase of the annuity about $1650 in the Dexter Bank. On the first day of May, 1908, he made an elaborate olographic will, which affords internal evidence that it was the product of a rational mind thinking coherently and reasoning intelligently. This will contains the following items among others:

. "5th. I give to Fred J. Richardson $5.00 (I gave him in the season of 1907 more than the other grand-children are likely to receive at my decease.")     .    .    .    .

"7th. I give and bequeath the sum of $500 for the purpose of building a monument to the memory of the citizens of North Newport who served in the War of 1861-65, to be built by my executors provided that my property at my decease shall not be less than $1500 after debts are paid."

Under these circumstances he visited the First National Bank of Dexter for the purpose of drawing the money on three certificates he held against the Bank amounting to $1137, stating that he proposed to buy an annuity, and asked the advice of the cashier, Mr. Sawyer, in regard to it. But the advice of the cashier being adverse to the proposition, he drew only the annual interest due him on those three certificates and left the bank without making a final decision in regard to the principal. But on July 3, Blake, Barrows & Brown of Bangor presented the certificates duly endorsed by Mr. Richardson, and received a check on Boston for the amount. Mr. Sawyer states that he had known Mr. Richardson for a number of years and that there was nothing noticeable in his appearance on that day different from what he had observed in former years and nothing in his appearance or conversation to suggest that he was not rational.

. It appears that after leaving the bank he reached the conclusion that he ought to have an annual cash income of $200, about three times the amount he was then receiving from deposits in the Bank, and on July 2, without solicitation from any one representing the defendant company, he went alone from his home in North New-

port to Bangor and found his way to the office of Blake, Barrows & Brown, to whom he was personally a stranger, and inquired for an annuity. Mr. Barrows, a member of the firm states in his testimony that he asked Mr. Richardson if he had any one dependent upon him, and whether he fully understood the nature of an annuity, but he found that he had obtained information from some one before coming to them, and had a clear understanding of the whole subject. He simply wished to know how much money he must pay them in order to obtain an income of $200 every year during the remainder of his life. He accordingly paid the amount required by the established rates of the Company for a man 78 years of age, having according to their tables an expectation of life of 5.11 years, and signed a formal application to be forwarded to the defendant company. In reply to Mr. Barrows' inquiry as to how long he expected to live, he replied in substance that he thought he should outlive the expectation and make money out of it. The conversation between them occupied from half an hour to an hour, and he observed nothing in Mr. Richardson's appearance or conversation indicating that he was a man of unsound mind.

This annuity contract involved no special or peculiar features. The policy was issued under the established regulations of the company. Any other applicant of his age could have procured an annuity on precisely the same terms. Nor can it be deemed an unreasonable contract for the annuitant to make under the existing circumstances. It would not have been considered an extraordinary transaction if he had accepted the grandson's proposition and given him a deed of his farm in consideration of an agreement for his own support during his lifetime. But he preferred to retain the ownership and control of the farm and live at the old homestead and increase his annual income by the use of his bank deposits for the purchase of an annuity.

But the plaintiff introduced evidence tending to show that four years before the purchase of the annuity, Mr. Richardson fell from his wagon while driving along the highway and was unconscious for some little time; that from that time on there was a gradual and progressive impairment of his mental faculties with loss of memory of recent events, while his recollection of the events of his early life remained unimpaired; that during the year preceding his death there was observable a marked impairment of his ability to

make simple mathematical calculations; that he had hallucinations of sight and hearing, delusions of persecution and a loss of real insight into his true condition both mental and physical, and that he had not been rational during the last six months of his life. Dr. Sheldon of Stetson was called to see him the 28th day of July nearly a month after the contract in question, and found him in bed. He says the patient gave him a history of being out in the field the day previous working quite hard. He complained of headache and dizziness and his mental condition was extremely bad; but he was not committed to the insane hospital until September 29.

Dr. Tyson, assistant superintendent had the patient under his charge until his death on the 11th day of October, and while from his mental condition when he was admitted, the nature of the disease, and the history of the case, he was of opinion that his judgment must have been impaired a month before, he did not consider that he had sufficient data by which to determine his mental status on July 2. And Dr. Hills, the superintendent who took charge of the institution after the death of Mr. Richardson, after hearing the testimony of the assistant and the history, of the case testified as an expert that "the man had been suffering from a gradually increasing mental enfeeblement; that he had had periods of mental confusion temporary in character which apparently were due to the degeneration of the arteries from which he was suffering. Those periods were of short duration, and the confusion apparently cleared completely, so that there was an interval between those attacks when he apparently was in a normal mental condition excepting for the enfeeblement of old age." He further stated that after hearing the testimony of Mr. Barrows relating to the purchase of the annuity, and the conversation held with him at that time, he should say that he understood the nature and quality of the contract made by him on the second day of July, but if he had delusions prior to that date, he should question the soundness of his judgment.

But no useful purpose can be subserved by a further discussion of the details of the testimony. It is not controverted that Joel Richardson suffered from a gradual degeneration of the brain tissue due to a hardening of the arteries, and died from senile dementia three months and ten days after the purchase of the annuity in question. But evidence of arterio-sclerosis is not necessarily proof

of senile dementia at any given period.   Notable illustrations of this fact might be adduced as a matter of common knowledge where men of great intellectual power afflicted with a hardening of the arteries have died from the effects of the disease without any symptoms of dementia within a few weeks after a prolonged and brilliant mental effort.   Even in the decadence of old age, the mental confusion and other symptoms of arterio-sclerosis and approaching dementia, are not always or ordinarily constant and continuous, but intermittent and periodical, and between the attacks the sufferer is in substantially a normal condition except the feebleness of old age.

Such is shown to have been the fact in the case at bar prior to July 28, 1908.   And it is the opinion of the court that the evidence in behalf of the plaintiff is insufficient to sustain the burden of proving that on the 2nd day of July of that year, Joel Richardson was not possessed of mental capacity sufficient to enable him to act rationally and reason intelligently with respect to the matter under consideration, but that it satisfactorily appears from all of the evidence that in making the not unreasonable contract entered into by him on that day for the purchase of an annuity, he had sufficient mind and memory to comprehend the nature and particulars of the transaction, and to act with an intelligent understanding of what he was doing.

The certificates must accordingly be,

*Judgment for the defendant.*