MARTHA MITCHELL ET ALII, EXCEPTANTS

IN RE WILL OF EMMA J. LOOMIS.

Somerset.      Opinion, July 24, 1934.

*Butler & Butler*, for proponents.
*Locke, Perkins & Williamson,* for appellants.

S ITTING: P ATTANGALL, C. J., D UNN, S TURGIS, B ARNES, T HAXTER, H UDSON, JJ.

D UNN, J. The exceptions relate to the matter of the official proof of a writing offered in probate as the last will of Emma J. Loomis, late of Skowhegan, deceased. The Probate Court, from jurisdictional and other evidence, determined that the instrument was what it purported to be. A sister and two nieces, of the next of kin of the decedent, alleging themselves aggrieved, appealed to the Supreme Court of Probate, the Superior Court being, by statute, such tribunal. The reasons of appeal comprised that the document was not the will of the decedent, that it had not been executed as required by law, that the maker was without requisite intellectual capacity to make a will, and that execution had been produced by fraud and undue influence.

Trial of cause was de novo on appeal.

The person named as executor in the will was its proponent; he had the burden of proving, by a fair preponderance of the evidence, that statutory formalities had been observed, and that the woman was of sound mind. *Gerrish* v. *Nason*, 22 Me., 438; *Robinson* v. *Adams*, 62 Me., 369; *Thomson, Aplt.*, 92 Me., 563, 43 A., 511; *American Board of Commissioners, etc., Aplts.*, 102 Me., 72, 66 A., 215. Only touching fraud and undue influence, were contestants obliged to make an affirmative demonstration. *O'Brien, Aplt.*, 100 Me., 156, 60 A., 880; *American Board of Commissioners, etc., Aplts.*, supra. The burden of proof, in its technically proper sense, does not ordinarily shift, but remains as the law originally casts it. *O'Brien, Aplt.*, supra.

The appellate court, on deciding for the proponent, decreed admission of the will to probate. Exceptions were allowed.

Exceptants, in oral argument, at the bar of the present court, urged merely that the evidence was insufficient to show mental soundness constituting testamentary capacity. Their brief makes no other point. This is the sole subject for consideration in the contest.

The will is dated October 3, 1932. It is sensible in its provisions, none sounding in folly. Testatrix, after directing the payment of her debts and charges, and the expenses of administration of her estate, designates where she wishes to be buried, and directs the erection of a headstone on her grave. She discriminates against the children of her sister Aurinda; mentions her sister Mary, and says she gives her nothing, "but if she not be living, I intentionally omit any children she may have." The children of her brother Charles also are specifically omitted. The sum of three hundred dollars is bequeathed, in and upon trust, to accumulate until the death of her sister Martha, to defray her (Martha's) burial expenses, including a monument; any excess is left to a cousin, Fred Loomis. The bequest was conditioned on the sister surviving testatrix. The residuary legatees are Fred Loomis and his wife.

The will was signed (sic) Miss J. Loomis.

Testatrix died January 18, 1933, aged seventy-six years. She had never married. Her most recent occupation had been that of a chambermaid; before that, she had been a shoe factory operative. The amount of her estate was about four thousand dollars.

When the will was written, testatrix' sister Mary, whose exclusion from bounty is of prior instance, was already dead. Her sister Martha, one of the exceptants, was a widow, in needy circumstances, eighty-eight years old. Besides this sister, and the two nieces also exceptants, testatrix had as relatives, a niece, nephews, and several cousins.

There had been a previous will, in 1928, or 1930. The instrument appears to have been destroyed; the draftsman, who also drew the last will, was not certain as to the exact date of the antecedent one. He testified that the clause excluding Mary, or her children, was in the former will; further, that in its provisions, the last differed from the earlier in but two respects; first, an absolute legacy of

three hundred dollars to Martha Mitchell was changed to the trust before mentioned; second, in the stead of Fred Loomis alone, he and his wife were together named as residuary legatees.

The record does not seriously assert that the intellect of Miss Loomis lacked integrity, in testable aspect, when she defined the original dispositions. A will legally made stands until legally revoked. The destruction of a will by a person lacking testamentary capacity would not be a revocation of it. *Rich* v. *Gilkey,* 73 Me., 595. The fact testatrix had made the preceding instrument was admissible, on the question of her ability to execute that in issue, because of similarity, and tendency to show a steady purpose of disposal.

That testatrix did not sign her given name was apparently unnoticed until the paper to which the signature had been set was filed for probate. The error was seemingly regarded as of negligible consequence.

The subscribing witnesses, all whom the proponent swore, testified not only to the ceremony of the execution of the document, but to sanity, in the synonomous sense of soundness. of mind, in connection with the dispositive act. Such witnesses may, in addition to facts, give their opinion as to the state of the testator's mentality. *Cilley, Aplt.,* 34 Me., 162; *Wells, Aplt.,* 96 Me., 161, 51 A., 868. Inquiry relates to the precise time of the execution of the will. *Shailer* v. *Bumstead,* 99 Mass., 112.

A physician who had regularly attended Miss Loomis, on being called to the stand, stated, in effect, that she had psychosis, or aberration, yet there was no perversion of judgment or reason. Touching infirmities of the mind, the doctor was not an expert; still he appears to have had adequate opportunity of observing and judging the intellectual faculties of his patient. *Fayette* v. *Chesterville,* 77 Me., 28; *Hall* v. *Perry,* 87 Me., 569, 33 A., 160.

Contestants offered witnesses who gave evidence based on the acts, conduct and language of the testatrix, to show that at the date of the execution of the will she was not of competency to make it.

Pernicious anemia was the attributed cause of Miss Loomis' death. The disease was accompanied by a form of insanity due to senility, and association of a hallucination of hearing. She heard

profane language on the part of two men, and, when she quarreled with the men, laughter on the part of women. There was testimony she had said that she was aware the perception was purely imaginary.

An expert on mental and nervous disorders, sworn by the contestants, expressed, in answer to a hypothetical question, his opinion that, on the day of making the will, Miss Loomis was insane; that she was suffering from senile dementia, paranoiac type.

The analysis and classification of mental diseases is impracticable and unnecessary in legal science. In law, every mind is sound that can reason and will intelligently in the particular transaction; and every mind is unsound that cannot so reason and will. *Johnson* v. *Maine & N. B. Ins. Co.*, 83 Me., 182, 22 A., 107.

"Senile dementia" is, however, as the words indicate, that diminution and weakness of mental endowment which results from old age. *Graham* v. *Deuterman*, (Ill.) 91 N. E., 61. "Paranoia" has been explained as being the synonym of "monomania". *People* v. *Braun*, 158 N. Y., 558.

In the consideration of the testimony of medical experts, the test of consistency and reasonableness, having reference to all the other testimony, which the opinions may corroborate or contradict, should be applied. *American Board of Commissioners, etc., Aplts.*, supra.

Proponent introduced testimony tending to rebut that for the contestants.

The law does not undertake to test the intelligence, and define the exact quality of mind which a testator must possess. Soundness is a matter of degree. That a man may make a valid will, it is not necessary that the greatest mental strength shall prevail. The essential qualification for making a will is a sound mind, which is one in which the testator had a clear consciousness of the business he was engaged in; a knowledge, in a general way, without prompting, of his estate, and an understanding of the disposition he wished to make of it by his will, and of the persons and objects he desired to participate in his bounty. This includes a recollection of those related to him by ties of blood and affection, and of the nature of the claims of those who are excluded from participating in his

estate. A person in such state and condition is capable of willing. "Sound mind", within the statute of wills, comprehends ableness enough to recollect property and beneficiaries, and conceive the practical effect of the will. The expression does not mean a perfectly balanced mind. A mind naturally possessing power, not unduly impaired by old age, or enfeebled by illness, or tainted by morbid influence, is, in legal contemplation, a "sound mind". *Hall v. Perry*, supra; *Wells, Aplt.*, supra; *Randall et al., Aplts.*, 99 Me., 396, 59 A., 552; *Rogers, Aplt.*, 126 Me., 267, 138 A., 59.

Testatrix was advanced in years. But stage of life and resultant weakness of body do not necessarily deprive one of right to make a will. Neither age nor bodily disease is, of itself, a disqualification. *Needham Trust Co. v. Cookson*, 251 Mass., 160; *American Board of Commissioners, etc., Aplts.*, supra. Intellectual and physical weakness, with partial failure of mind and memory, is said not to be solely an indication of inability to make a will. *Hall v. Dougherty*, 5 Del., 435. Although a testatrix be old and infirm, she may competently will, if she then had intelligence sufficient to understand correctly what she was doing, and did, deliberately, what she meant to do. *In re Eddy*, 32 N. J. E., 701; *in re Koll's Estate*, (Iowa) 206 N. W., 40; *Higbee v. Bloom*, (Kan.) 196 Pac., 1080; *Clark v Clark*, (Ore.) 267 Pac., 534. See, also, *Richardson v. Travelers Ins. Co.*, 109 Me., 117, 82 A., 1005.

Hallucination, temporary in nature, is not, per se, insanity. *Staples v. Wellington*, 58 Me., 453. "The state of mind indicated by hallucination is strikingly illustrated by the remarkable story of Nicolai, the Berlin bookseller, who, for a length óf time, was visited at his bedside by individual forms that were visible to his sight and addressed him. During all this period he was conscious it was a delusion. Still he transacted his ordinary business with his usual ability, and his contracts were as valid as if the delusion had not existed." Appleton, C. J., in *Staples v. Wellington*, supra.

It is undoubtedly true that when a hallucination has become permanent, it is to be deemed insanity, general or particular according to the nature of the delusion. *Staples v. Wellington*, supra. Nevertheless, to invalidate a will, an insane delusion must be operative on testation. A person whose mind is affected by such a delusion, however unreasonable and absurd, may make a valid will, pro-

vided the delusion is not of influence. *Dunham's Appeal*, 27 Conn., 192; *Rice* v. *Rice*, (Mich.) 15 N. W., 545; *Rice* v. *Rice*, (Mich.) 19 N. W., 132; *Pidcock* v. *Potter*, 68 Pa. St., 342; *Smith* v. *Smith*, 48 N. J. E., 566; *Blakely's Will*, (Wis.) 4 N. W., 337; *Cole's Will*, (Wis.) 5 N. W., 346. To affect its soundness, the will must be the direct offspring of delusion controlling the mind. *Boardman* v. *Woodman*, 47 N. H., 120; *Robinson* v. *Adams*, supra.

Derangement, to invalidate a will, must usually be of such broad character as to establish inefficacy generally, or some narrower form of insanity under which testator is hallucinated or deluded; and such abnormality must have been of proximate ascendency. *Rogers, Aplts.*, supra. Except in so far as it may tend to show the quality of testator's mind at the time of executing the will, the condition of his mind before or after that time is unimportant. If he was then rational and acting rationally, or, in popular phrase, knew and understood what he was about, the will is valid. Gardner on Wills, p. 89, and supporting cases cited. Although fixed insanity has been established, it may be shown that execution was during a lucid interval. There may, in a case of senile dementia, be such a thing as a "lucid interval," during which the person is qualified to will. *Kerr* v. *Lunsford*, (W. Va.) 8 S. E., 493.

The case is not before this court for consideration anew. The key to the situation here is whether credible evidence supports the decree below. A precedent commonly cited is that findings of fact upheld by any evidence, that is, any reasonable and substantial evidence, will seldom be controlled. *Eacott, Aplt.*, 95 Me., 522, 50 A., 708; *Randall et al, Aplts.*, supra; *Costello, Aplt.*, 103 Me., 324, 69 A., 269; *Palmer, Aplt.*, 110 Me., 441, 86 A., 919; *Gower, Aplt.*, 113 Me., 156, 93 A., 64; *Thompson Aplt.*, 116 Me., 473, 102 A., 303; *Cotting, Aplt.*, 118 Me., 91, 106 A., 113; *Packard, Aplt.*, 120 Me., 556, 115 A., 173; *McKenzie, Aplt.*, 123 Me., 152, 122 A., 186.

The conclusion of the Supreme Court of Probate had ample support in believable evidence.

The mandate will be:

> *Exceptions overruled.*
> *Decree affirmed.*