**In re Helen M. (Young) LEONARD, Appellant,**

**From the Decree of Judge of Probate In re Allowance of Last Will and Testament of J. Herbert Gould.**

Supreme Judicial Court of Maine.

June 24, 1974.

David A. Nichols, Camden, for appellant.

Clifford F. O'Rourke, Camden, for appellee.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

■ Helen M. (Young) Leonard has appealed from the decision of a Superior Court Justice sitting as the Supreme Court of Probate sustaining the allowance of the last will and testament of J. Herbert Gould by the Judge of the Knox County Probate Court. Although there is nothing in the record which defines the exact relationship of the appellant to the testator, it was stipulated that she bore such a relationship as an heir-at-law to the testator that she had standing to appeal from the allowance of the will. 4 M.R.S.A. § 401. Since she was not a beneficiary under the will and since the residuary devisee thereunder was not an heir-at-law, it is clear that appellant is an aggrieved party and, therefore, the Supreme Court of Probate had jurisdiction to entertain the appeal. O'Grady v. Partridge, 319 A.2d 115 (Opinion dated May 7, 1974); see In Re Will of Susan G. Edwards, 161 Me. 141, 210 A.2d 17 (1965).

The only issue urged before us on appeal is the legal accuracy of the finding of the Justice below that "J. Herbert Gould did possess testamentary capacity at the time of the execution of said will." A review of the record leads us to the conclusion that this decision was correct and we deny the appeal.

■ From the briefs and oral argument it becomes clear that appellant's position is not premised on the theory that the proponent has failed to prove the testator possessed sufficient mental competence to execute a will but is premised on the argument that the proponent failed to introduce competent evidence in the Supreme Court of Probate to prove that the testator, when the will was executed, possessed an active and disposing memory.[1]

Although the basic legal rules relating to testamentary capacity are precedentially settled, the application thereof to the facts of given cases is sometimes difficult. We must initially have these legal standards in mind.

■ 18 M.R.S.A. § 1 permits "a person of sound mind" and of 21 years of age to dispose of his estate by will.[2] This statutory mandate of mental soundness is subject to "no exception or qualification" and the burden rests upon the proponent to prove it affirmatively. Chandler Will Case, 102 Me. 72, 87, 66 A. 215, 221 (1906).

Our Court has interpreted testamentary capacity, adopting the following language:

"A 'disposing mind' involves the exercise of so much mind and memory as would enable a person to transact common and simple kinds of business with that intelligence which belongs to the weakest class of sound minds; and a disposing memory exists when one can recall the general nature, condition and extent of his property, and his relations to those to whom he gives, and also to those from whom he excludes, his bounty. He must have active memory enough to bring to his mind the nature and particulars of the business to be transacted, and mental power enough to appreciate them, and act with sense and judgment in regard to them. He must

---

1. The proponent of a will, both in the Probate Court and on a valid appeal in the Supreme Court of Probate, retains the burden of establishing by affirmative evidence that the testator at the time of the execution of the will was of sound mind. Chandler Will Case, 102 Me. 72, 66 A. 215 (1906).

2. The legislature has twice amended this statute since the will before us was executed so that as it now reads "a person of sound mind and of the age of 18 years . . . may dispose of his real and personal estate by will . . . ." Pub.L.1972, ch. 598, § 18.

have sufficient capacity to comprehend the condition of his property, his relations to the persons who were or should have been the objects of his bounty, and the scope and bearing of the provisions of his will. He must have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them."

Hall v. Perry, 87 Me. 569, 572, 33 A. 160, 161 (1895); Waning, Appellant, 151 Me. 239, 117 A.2d 347 (1955); MacVeagh, Appellant, 141 Me. 260, 42 A.2d 903 (1945); Martin, Appellant, 133 Me. 422, 179 A. 655 (1935); In Re Will of Loomis, 133 Me. 81, 174 A. 38 (1934).

The type of evidence from which the inference of testamentary capacity may be drawn has likewise received judicial construction:

"[E]vidence of testator's conduct, emotions, methods of thought, and the like, for a very considerable period before and after the execution of the will, is admissible to show his capacity at the moment of making the will. The evidence must be restricted to a reasonable time on either side of the execution of the will."

Waning, Appellant, 151 Me. at 252, 117 A. 2d at 354.

■ The Law Court is limited in its review of the decision of a Justice sitting in the Supreme Court of Probate by the well established precept that his findings of fact are conclusive unless clearly erroneous. Rule 52(a), M.R.C.P.;[3] see Cotting v. Tilton, 118 Me. 91, 106 A. 113 (1919).

■ In our review of the facts heard by the single Justice and upon which his conclusion must necessarily rest, we are mindful of several decisions of this Court directed at the weight to be given specific types of evidence when testamentary capacity has been brought into issue. It is proper for a Justice faced with this issue to consider the language of the will itself as evidencing either testamentary capacity, or incapacity, as the case may be. *Waning, Appellant, supra.* Additionally, the testimony given by the subscribing witnesses to the will has been accorded prima facie effect in proving testamentary capacity. *Martin, Appellant, supra;* In Re Royal's Appeal, 152 Me. 242, 127 A.2d 484 (1956); In Re Paradis' Will, 147 Me. 347, 87 A.2d 512 (1952). The credibility of witnesses who testify on the issue of mental capacity and the probative force of their testimony is for the determination of the Justice who heard and saw the witnesses, and his conclusion thereon will not be subject to reversal if supported by competent evidence. MacVeagh, Appellant, 141 Me. 260, 42 A. 2d 903 (1945).

Bearing in mind the foregoing legal principles, we now turn to the facts.

■ At the time this will was executed the testator was 79 years of age. He died slightly more than five years thereafter without changing the terms of his will despite the intervening deaths of his brother, his brother's wife, and his business associate, leaving only the widow of this associate as the survivor and ultimate sole beneficiary under the will.

The scrivener of the will, an attorney, had known the testator for "probably 30 years or more before he died." The attorney described his relationship with Mr. Gould in this language: "I did legal work for him, did his income taxes, transactions

---

3. See Field, McKusick and Wroth, Maine Civil Practice, Rule 52, Commentary 52.7, stating: "The rule is intended to apply the same test as applied prior to the rules to find-ings of a single justice sitting in law or equity or in the Supreme Court of Probate." *See* Harriman v. Spaulding, 156 Me. 440, 165 A. 2d 47 (1960).

of various kinds, so forth." He had made at least one, if not more, prior wills for Mr. Gould.

Several days before the actual signing of the will in question the testator consulted his attorney and, because he was facing hospitalization, decided to make a new will. Pursuant to this consultation the attorney prepared the will, retained it for several days and, when requested to do so, went to the hospital for the purpose of having the will executed. He then met with the testator, had him read the will, and on being informed that he was ready to execute it, obtained the services of two licensed practical nurses employed at the hospital to serve as subscribing witnesses. The testator then signed the will in the presence of the attorney and the two nurses. The attorney described his concept of Mr. Gould's mental capacity by testifying "he appeared to be able to execute an instrument." The nurses, at least one of whom had attended Mr. Gould during his illness, described him as appearing "normal" and "alert."

After the will was formally signed the attorney, at the testator's request, retained the will and took it to his office. A few days after the testator was released from the hospital he had occasion to be in the attorney's office and talked with the attorney's secretary, who was named as executrix in the will and was a long time family acquaintance of the testator. When asked the frequency of her meetings with Mr. Gould, she replied, "so many times I couldn't remember," and she characterized this as being "probably more than six times a year."

The record also discloses the following testimony from the named executrix relating to a conversation with the testator shortly after the will was executed:

"I met him on the street. We talked and I asked him if he wanted to pick up the will, because I knew it had been put in Mr. Gillmor's safe for safe-keeping; and at that time I asked him if he wanted to re-read the will and see if it was as he wanted it, if he wanted to make a new will, and he said not, he didn't want to do it, he knew what was in it, and he wanted it left with Mr. Gillmor for safe-keeping."[4]

The record also indicates that the testator had been in the insurance business with Mr. and Mrs. Bert Sheets. Mr. Sheets died in July, 1969. Mr. and Mrs. Sheets had known the testator for at least nineteen years before Mr. Sheets died. Mr. Gould was active in the insurance business until Mr. Sheets died and continued his interest thereafter by assisting Mrs. Sheets in selling the business. During the period subsequent to his release from the hospital and sale of the insurance business, Mr. Gould was described as having gone to the office almost on a daily basis and assisted in carrying on the business.

It should also be noted that the appellant introduced no evidence, apparently resting on the theory that the law imposed no burden upon her to do so in view of the fact that she was not the proponent of the will.

The Justice below, after considering the above recited testimony, found from an "abundantly clear" record that "J. Herbert Gould did possess testamentary capacity at the time of the execution of said will." Tacit in this ruling is the conclusion that at the critical time of executing the will, the testator possessed both a sound mind and a disposing memory. Was this finding "clearly erroneous"?

■ Since the argument is advanced that the proponent failed to prove that segment of mental soundness requisite to testamentary capacity which was described in argument as "an active and disposing memory," we note in the record numerous facts from which the Justice could properly draw the inference that Mr. Gould's memory was in fact active at the time the

4. This witness was aware of the contents of the will because she had personally typed it.

will was executed. The terms of the will itself indicate a clear recollection of the only heir-at-law which the record discloses the testator had at the time he executed the will, namely, his brother. 18 M.R.S.A. § 1001(4).[5] The will also left certain real estate and personal property to the brother's wife should she be the survivor at the time of the testator's death. The residue of the estate was bequeathed to the former business partners, Mr. and Mrs. Sheets, or the survivor of them.

Speaking in terms of testator's memory, it should be also noted that the will contained this language:

> "If Gilbert B. Bryant is then using some of my land for pasturing his sheep, I direct that he shall have ample time to make any other arrangements he shall choose for such pasturing."

It is clear to us that from the contents of the will itself, the testimony of the subscribing witnesses thereto, and the declarations of the testator shortly before and after executing the will, the Justice below had sufficient evidence in the record to prove, prima facie, all the elements of testamentary capacity. *Martin, Appellant, supra.* It is clear beyond doubt from his ruling that he so accepted this evidence. That being so, appellant's argument that the record fails to disclose any evidence to prove an integral element of testamentary capacity, namely, a disposing memory, overlooks a sound legal concept.

Since the appellant introduced no evidence to rebut, contradict or deny the prima facie impact of the proponent's evidence, we now hold that proof of testamentary capacity had been established before the Justice below.

■ The effect of the introduction of prima facie evidence in proof of a disputed fact is to shift the burden of going forward to the contesting party whose obligation then becomes to present facts designed either to controvert such disputed fact, or, at the very least, to bring the contrasting facts to a point where in terms of evidentiary value they may be said to be of equal weight. Relating this rule to the instant situation, until the appellant presented some evidence from which a lack of this integral of testamentary capacity, namely, a disposing memory, could be inferred, it cannot be said that the balance of probabilities in proof thereof was equalized. The proponent's evidence, standing unrebutted, and accepted by the fact finder as proof of testamentary capacity justified his conclusion. *See* Hann v. Merrill, 305 A.2d 545, 552–53 (Me.1973); *see also* City of Saco v. Tweedie, 314 A.2d 135, 136 (Me.1974). The Justice below had no legally acceptable alternative ruling available other than the one he adopted.

■ Finally, we note the docketing of a cross appeal by the Executrix, which was not prosecuted, and which should now be dismissed.

The entries are:

Appeal denied. Cross appeal dismissed.

WERNICK, J., did not sit.

All Justices concurring.

---

5. At oral argument it was conceded that the appellant was a "cousin" of the testator but the degree of this relationship is not disclosed. Under Maine law a cousin may share in an intestate estate only when there is no issue, father, mother, brother or sister. 18 M.R.S.A. § 1001(6).

Additionally, we note the provisions of 18 M.R.S.A. § 1005 as the only statute under which any provision is made for an heir unintentionally omitted from a will, which is limited to a child, or the issue of a deceased child, of a testator, the presumption of unintentional omission being rebuttable. No such presumption arises from the omission of other relatives. *See* Appeal of Ward, 132 Me. 19, 164 A. 889 (1933).