**ESTATE OF John F. TURF** [1].

Supreme Judicial Court of Maine.

Argued Nov. 14, 1980.

Decided Oct. 16, 1981.

1. Even though this appeal is decided under the law in effect prior to the Probate Code, M.R. S.A. Title 18–A, we have conformed the title to Rule 4(a)(1) and Form N(102) of the Maine Probate Rules, effective January 1, 1981.

Harry N. Starbranch (orally), Augusta, for appellant Dorothy E. Tranum.

Clayton N. Howard, Damariscotta, for plaintiff.

Roger A. Putnam (orally), Verrill & Dana, Portland, Strout, Payson, Pellicani, Cloutier, Hokkanen & Strong, Curtis M. Payson, Rockland, for Clarence and Madolyn Turffs.

Before McKUSICK, C. J., and WER-NICK *, GODFREY, NICHOLS, GLASS-MAN **, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

The Superior Court, Knox County, sitting as the Supreme Court of Probate[2], affirmed the admission to probate of the 1975

---

* Wernick, J., sat at oral argument and participated in the initial conference, but died fore this opinion was adopted.

** Glassman, J., sat at oral argument and participated in the all initial conference, but died before this opinion was adopted.

2. See 4 M.R.S.A. §§ 401–06 (1979) (repealed by P.L.1979, ch. 540, § 7–B, effective January 1, 1981).

will and 1976 codicil thereto of John F. Turf by the Probate Court. On appeal to the Law Court, the contestant challenges the Supreme Court of Probate's findings that: (1) the testator's domicile was in Maine at his death; (2) the testator possessed the requisite testamentary capacity to execute both the will and the codicil; (3) the execution of the codicil was in conformance with Maine law; and (4) neither the will nor the codicil was the product of undue influence. Finding no error below, we affirm the judgment of the Supreme Court of Probate entered on June 24, 1980.

Findings of fact by a justice sitting in the Supreme Court of Probate are conclusive unless shown to be clearly erroneous. *Estate of Hatt*, Me., 431 A.2d 52, 53 (1981). If there is any competent evidence in the record which supports a finding, then that finding is not clearly erroneous. *Harmon v. Emerson*, Me., 425 A.2d 978, 981 (1981).

Establishment of domicile requires proof of physical presence and intention to remain. *See Belanger v. Belanger*, Me., 240 A.2d 743, 746 (1968). The burden of proof by a preponderance of the evidence is upon the proponent of the will. *See Guilford Trust Co. v. Milo Community Hospital*, Me., 227 A.2d 612, 614 (1967). The parties agree that by the end of 1975 the testator had left his New York apartment and had come to Maine and lived with his cousin and his cousin's wife. The testator continued to reside in Maine until his death in February 1977. The record contains a letter and an affidavit signed by the testator stating that in 1976 he authorized the closing of his New York apartment, that he considered Maine to be his residence, and that he wished to sever all ties indicating that he resided in New York. This evidence warranted find-

ings that the testator was physically present in Maine and intended to remain here. Those findings support the legal conclusion that the testator died domiciled in Maine.

Under the law applicable to this case, the proponent of a will also must prove by a preponderance of the evidence the testator's capacity to execute the will.[3] *In re Leonard*, Me., 321 A.2d 486, 488 (1974). The testimony given by the subscribing witnesses to a will has been accorded prima facie effect in proving testamentary capacity. *Id.* at 489. There was evidence to show that all the witnesses to the executions of the will and of the codicil believed that the testator possessed the necessary testamentary capacity. Moreover, Lawrence Pierce[4] testified that in February 1977 (seven weeks after the execution of the codicil) he found the testator to be mentally alert and able to respond appropriately to questions.[5] This evidence supports the findings of testamentary capacity at the times of making of the will and of the codicil.

Due execution of a will was governed in 1975 and 1976 by 18 M.R.S.A. § 1 (Supp. 1980) (repealed effective January 1, 1981). Again, the burden of proof is upon the proponent. *Guilford Trust Co.*, 227 A.2d at 614. The contestant argues solely that no evidence supports a finding that the testator knew the contents of the codicil when he signed it. *See Gerrish v. Nason,* 22 Me. 438, 441–42 (1843); *cf. In re Will of Cox*, 139 Me. 261, 266, 29 A.2d 281, 284 (1942) *quoting Cilley v. Cilley*, 34 Me. 162, 164 (1852).

The record contains a partial transcript of what was said during the execution of the codicil. This transcript reveals that the testator was asked if he wished to

---

3. We reiterate that our decision herein is based on the law in effect prior to adoption of the Probate Code. The burden of proof under the Code with respect to the issues may differ. *See, e. g.,* 18–A M.R.S.A. § 3–407 (1981).

4. Mr. Pierce, a New York attorney, was appointed guardian ad litem for the testator by the New York Supreme Court in an unrelated conservatorship proceeding. He interviewed

the testator to aid in the preparation of his report for the New York court.

5. Evidence of a testator's capacity for a considerable period before and after execution of a will or codicil is admissible to show his capacity at the time of making the instrument. *See In re Leonard*, Me., 321 A.2d 486, 489 (1974).

make each of the relevant changes contained in the codicil. To each question he responded affirmatively. This evidence, combined with the subscribing witnesses' testimony evidencing the testator's capacity, supports the finding that the codicil was properly executed.

 The burden of proving undue influence rests upon the contestant. *Estate of Hatt*, Me., 431 A.2d 52, 53 (1981); *In re Dilios' Will*, 156 Me. 508, 511, 167 A.2d 571, 573 (1960).

> Most prominent among the circumstances which have been taken as evidence of undue influence are,
>
> (1) the existence of a confidential relationship between the testator and the one who is asserted to have influenced him;
>
> (2) the fact that the testator has disposed of his property in an unexpected or unnatural manner. [Citations omitted.]
>
> Maine has taken the position ... that proof of such circumstances does not raise a *presumption* of undue influence. It simply permits the drawing of an *inference* that such was present.

*In re Will of Fenwick*, Me., 348 A.2d 12, 15 (1975) (emphasis in original).

 While there may be evidence which would support a finding of a confidential relationship between the testator and the testator's cousin's wife, the evidence also supports a finding that the testator disposed of his property in a natural manner. While the contestant's legacy was reduced by the 1976 codicil, she had by then received *inter vivos* gifts from the testator worth over $20,000. When combined with those gifts, the 1976 legacy was comparable to the testator's provisions for the contestant in his previous wills dating from 1961 to April 1974. The testator's cousin and the cousin's wife, who as residuary beneficiaries benefitted from the reduction in the contestant's legacy, had taken the ailing testator into their home by 1975 and cared for him thereafter. To the testator's knowledge, his cousin was his only living relative. This evidence provides support for the trial court's finding that the contestant failed to prove undue influence.

We have examined the contestant's other contentions and find them to be without merit.

The entry is:

Judgment of the Supreme Court of Probate affirmed.

All concurring.