Charles L. WILDES

v.

**OCEAN NATIONAL BANK OF KENNE-BUNK and New England Seafood Packers, Inc.**

v.

**Charles L. WILDES.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1985.
Decided Oct. 8, 1985.

Charles L. Wildes, pro se (orally).

Robert E. Crowley (orally), Kennebunk, for Ocean Nat. Bank.

Stephen Y. Hodsdon (orally), Kennebunk, for N.E. Seafood Packers, Inc.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Charles L. Wildes appeals from a judgment entered in Superior Court (York County) against both him and his wholly owned corporation, Wildes, Incorporated (Incorporated). Wildes and Incorporated sued Ocean National Bank of Kennebunk (Bank), alleging that the Bank had fraudulently induced them to enter into a mortgage transaction with it on February 5, 1974. New England Seafood Packers, Inc. (Packers) purchased the mortgaged real estate located in Cape Porpoise from the Bank on June 1, 1977, after the Bank had purchased the property at a foreclosure sale a year before. Packers then brought a forcible entry and detainer action against Wildes and Incorporated. As a defense to Packers' suit, Wildes and Incorporated claimed that because of fraud by the Bank in the mortgage transaction, their title to the property was superior to Packers'. The fraud suit and the issue of title in the forcible entry and detainer action were consolidated and tried before a Superior Court justice sitting without a jury. The Superior Court found against Wildes and Incorpo-

rated on both issues. Only Wildes has appealed. We affirm.

Wildes claims that he was induced to incur contractual obligations and to cause his corporation to execute a mortgage securing a $45,000 note by fraudulent representations by the Bank that he could ultimately borrow a total of $55,000. Wildes applied for a $55,000 loan on September 13, 1973. He alleges that a Bank official assured him at that time that the loan would be approved in the full amount requested. On November 7, 1973, the Bank sent Wildes a letter setting at $45,000 the maximum amount for which the loan would be approved. Wildes claims, however, that the Bank orally assured him that he could borrow the additional $10,000 once a cash shortage at the Bank was alleviated. He claims that those assurances continued up until the $45,000 loan closing on February 5, 1974, and were repeated at the closing. The Bank never loaned Wildes the additional $10,000.

█ The existence of a false representation and justifiable reliance thereon are among the essential fact elements of a fraud claim. *Letellier v. Small*, 400 A.2d 371, 376 (Me.1979). In addition, the plaintiff in a fraud action must prove every element of his claim by clear and convincing evidence; in other words, evidence that establishes every factual element to be highly probable. *See Horner v. Flynn*, 334 A.2d 194 (Me.1975), *as modified by Taylor v. Commissioner of Mental Health and Mental Retardation*, 481 A.2d 139, 153–54 (Me.1984). When the trial court finds that the plaintiff has failed to prove his fraud claim, that finding will stand unless it is shown on appeal to be clearly erroneous. M.R.Civ.P. 52(a). In light of the heavy burden that Wildes had to carry to prove fraud on the part of the Bank and in light of the deference that any appellate court must pay to the findings made by the trial judge, we cannot say that the Superior Court's rejection of Wildes' fraud claim was clearly erroneous. We therefore af-

firm the judgments entered adverse to him and in favor of the Bank and Packers.

On the issue of reliance, the Superior Court found, based on Wildes' own testimony, that Wildes was contractually committed to the construction of a building upon the mortgaged land before he either applied to the Bank for a loan or discussed a possible loan with Bank officials. By his own admission Wildes did not incur those contractual obligations in reliance upon assurances of future loans from the Bank. Furthermore, the court found that even if it assumed, without deciding, that the Bank represented on September 13, 1973, that Wildes' loan request would be approved in full, no reliance upon that representation would have been justified after Wildes received the Bank's letter of November 7, 1973. That letter informed Wildes unequivocally that his loan application would not be approved in an amount exceeding $45,000, and the letter entered as an exhibit bears Wildes' handwritten acknowledgment. In addition, the attorney representing Wildes at the time testified that after receiving the November 7 letter, Wildes resigned himself to having to make do with only $45,000. Thus, the evidence supports the Superior Court's findings that Wildes did not rely on assurances from the Bank in incurring contractual obligations and that Wildes did not, and could not have, justifiably relied upon any representation made on September 13, 1973, in causing the mortgage to be executed on February 5, 1974. Having support in the evidence, these findings are conclusive and will not be disturbed on appeal. *Estate of Turf,* 435 A.2d 1087, 1089 (Me.1981).

The only evidence that the Bank made representations after November 7, 1973, that money in excess of $45,000 would be loaned to Wildes was the testimony of Wildes himself. The Superior Court found that the Bank never gave any such assurance. In assessing Wildes' credibility, the court relied on the testimony of the attorney and the accountant representing Wildes at the time of the mortgage trans-

action. The attorney testified that he was present at the February 5, 1974, loan closing and that, contrary to Wildes' testimony, he heard no assurances of future loans made to Wildes. The accountant testified that after February 5, 1974, Wildes tried to obtain additional financing elsewhere after receiving only $45,000 from the Bank. It is primarily for the factfinder to assess the credibility of witnesses and to assign appropriate weight and significance to all of the evidence. In this case, the Superior Court justice's articulated reasons for rejecting Wildes' testimony are reasonable and well supported by the record. As such, the court's finding that no representations were made after November 7, 1973, will not be disturbed on appeal. *Tonge v. Waterville Realty Corp.,* 448 A.2d 902, 905 (Me.1982).

Thus, not only does the evidence at trial fail to compel a finding of fraud on the part of the Bank, it amply supports the contrary findings made by the Superior Court. The judgment against Wildes in his fraud suit against the Bank must be affirmed.

Wildes' defense to Packers' forcible entry and detainer action depended upon his success in getting the Bank's foreclosure of the mortgaged premises set aside on the ground of fraud. Once Wildes failed in proving fraud in his suit against the Bank, his title defense to Packers' attempt to evict him from those premises also failed. The judgment against Wildes in Packers' forcible entry and detainer action must also be affirmed.

The entry is:

Judgments affirmed.

All concurring.