MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 15
Docket:        Lin-24-235
Argued:        December 12, 2024
Decided:       February 11, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, and DOUGLAS, JJ.

ESTATE OF PATRICIA M. SPOFFORD

CONNORS, J.

[¶1] Michael Zani and Peter Zani are the sons of Patricia M. Spofford, who passed away on June 7, 2020. The Zanis appeal from the order of summary judgment entered by the Probate Court (Lincoln County, *Avantaggio, J.*) finding that there was no genuine issue of material fact concerning Spofford's testamentary capacity when she executed her will on March 1, 2018. On appeal, the Zanis argue that the court erred and that there is a genuine issue concerning her testamentary capacity. While the Zanis concede that they have "no direct evidence regarding the events that took place on March 1, 2018," they argue that other evidence "from before and after the date the will was executed . . . puts [Spofford's] testamentary capacity on March 1, 2018, into serious doubt." Examining the issue de novo and viewing the evidence in the light most favorable to the Zanis, we conclude that there is no genuine issue of material fact regarding whether Spofford possessed the requisite testamentary

2

capacity when she executed her will, and we thus affirm the judgment. *See Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242.

[¶2] The summary judgment record contains significant evidence of Spofford's testamentary capacity on March 1, 2018. This evidence includes videos of the will's execution recorded by Spofford's attorney. These videos show that Spofford understood "the business [she] was engaged in"; possessed knowledge of the makeup and general extent of her estate; could identify her family members and her relationships to them; knew how she wished to dispose of her estate; and had clear wishes about the persons she wanted "to participate in [her] bounty" and whom she wished to exclude. *In re Loomis' Will*, 133 Me. 81, 85, 174 A. 38, 41 (1934); *see also Est. of Washburn*, 2020 ME 18, ¶ 10, 225 A.3d 761. The videos also establish that Spofford reviewed her will with her attorney, that Spofford confirmed that the drafted will accurately reflected her wishes, and that she signed her will in the presence of two witnesses and a notary.[1]

---

[1] Additional evidence of Spofford's testamentary capacity includes an affidavit signed by Spofford's attorney stating that she believed that Spofford was competent to execute her will on March 1, 2018, and an affidavit signed by one of the witnesses attesting that she "had no reason to believe that [Spofford] was not acting of her own free will or that she lacked a 'sound mind' during the will signing." The witness added that on the day that Spofford executed her will, she appeared "present, alert, and aware of her surroundings and actions."

[¶3]   Testimony by Spofford's primary care physician further supports the conclusion that Spofford possessed testamentary capacity when she executed her will.  In an affidavit, the physician stated that he had examined Spofford on the day that she executed her will and had concluded, based on that examination "as well as [his] review of [Spofford's] medical history," that she "possessed the capacity and intention to execute a testamentary will on March 1, 2018."[2]  *See In re Waning's Appeal*, 151 Me. 239, 252, 117 A.2d 347, 354 (1955) ("An attending or family physician's opinion as to the mental health of his patient is competent [evidence of that patient's testamentary capacity]."); *Est. of Mitchell*, 443 A.2d 961, 963 (Me. 1982) (relying on an examination by a neurologist conducted "on the day before" the decedent executed her will in assessing whether the decedent possessed sufficient testamentary capacity "at the time when [s]he execute[d] [her] will").

[¶4]   In contrast, the evidence on which the Zanis rely is too remote from the issue of Spofford's testamentary capacity at the time that she executed her

---

[2]  The physician found that "[Spofford] was alert and oriented to person, place, and time of day"; that she said "she understood the nature of her testamentary will, the extent of her possessions, and the purpose and consequences of executing the will"; that she gave him no "reason to suspect that she was under any duress"; and that "[w]hile [Spofford] had been previously diagnosed with dementia and Alzheimer's disease, during the examination she was neither confused nor disoriented, and she was not presenting with delusional thought or altered thinking."  He added that "[t]hough [Spofford] presented with mild cognitive dysfunction and memory impairment, she completed a cognitive assessment with little difficulty."

4

will to create a genuine dispute of material fact. *See Zani v. Zani*, 2023 ME 42, ¶ 12, 299 A.3d 9; 18-C M.R.S. § 3-407 (2024). The Zanis reference, for example, an incident that occurred a year before the execution of Spofford's will in which she assaulted her caregivers and drove erratically through town. They also reference notes in Spofford's medical records regarding her cognitive issues written by the same doctor who determined that she was of sound mind on the day she executed her will. The Zanis specifically discuss a February 15, 2018, note in which Spofford's physician wrote that she displayed "[s]ignificant cognitive dysfunction" and a June 4, 2018, note in which he described Spofford as "uncooperative," "not able to listen," and "aggressive and reactive." The Zanis also reference a report by another doctor, based on two examinations of Spofford conducted in the summer of 2017, in which that doctor diagnosed Spofford with cognitive impairment and recommended the appointment of a guardian and conservator.

[¶5] This evidence does not create a genuine dispute of material fact regarding whether Spofford lacked testamentary capacity on the day that she executed her will. *See Appeal of Royal*, 152 Me. 242, 247, 127 A.2d 484, 487 (1956) ("The want of capacity, when urged as a ground for invalidating a testamentary act, must relate to the time of the act. Incompetency may exist

before or after, and still the will be valid." (quotation marks omitted)); *In re Loomis' Will*, 133 Me. at 87, 174 A. at 41–42 ("Except in so far as it may tend to show the quality of [the] testator's mind at the time of executing the will, the condition of his mind before or after that time is unimportant. If he was then rational and acting rationally, or, in popular phrase, knew and understood what he was about, the will is valid."); *cf. In re Leonard*, 321 A.2d 486, 489 (Me. 1974) ("[E]vidence of testator's conduct, emotions, methods of thought, and the like, for a very considerable period before and after the execution of the will, is admissible to show his capacity at the moment of making the will. The evidence must be restricted to a reasonable time on either side of the execution of the will." (quotation marks omitted)).

[¶6] Additionally, the Zanis challenge their mother's capacity partly on the ground that she had been diagnosed with dementia and Alzheimer's disease; however, we have established that some degree of cognitive impairment, including dementia, does not preclude testamentary capacity. *E.g.*, *In re Loomis' Will*, 133 Me. at 87, 174 A. at 42 ("Although fixed insanity has been established, it may be shown that execution was during a lucid interval. There may, in a case of senile dementia, be such a thing as a 'lucid interval,' during which the person is qualified to will.").

[¶7]  Also, while the Zanis argue that "the fact that [Spofford] was under a guardianship and conservatorship at the time the will was executed . . . is certainly persuasive evidence that testamentary capacity did not exist," we have established that someone under guardianship and conservatorship may have the requisite testamentary capacity to execute a will.  *E.g.*, *In re Am. Bd. of Comm'rs for Foreign Missions*, 102 Me. 72, 101, 66 A. 215, 226 (1906) ("[T]he incapacity of guardianship is simply a fact which may be proven like any other fact tending to establish mental incapacity, but it does not work an estoppel upon the proponents.  The law recognizes that a person may require a guardian by reason of incapacity in one particular, while, in other respects, he may be entirely competent.  It is well settled . . . that there may be partial insanity of the testator, some unsoundness of mind, that does not in any way relate to his property or disposition of the same by will."); *Est. of Turf*, 435 A.2d 1087, 1089 n.4 (Me. 1981) (concluding that a testator possessed testamentary capacity despite having been assigned a guardian in an unrelated conservatorship proceeding in another state).

[¶8]  Because we find that there was no genuine issue of material fact regarding whether Spofford had the requisite testamentary capacity when she

executed her will, we affirm the Probate Court's judgment. *See Grant*, 2016 ME 85, ¶ 12, 140 A.3d 1242.

The entry is:

Judgment affirmed.

---

Christopher K. MacLean, Esq. (orally), Camden, for appellants Michael Zani and Peter Zani

Oliver M. Walton, Esq. (orally), and Amy K. Olfene, Esq., Drummond Woodsum, Portland, for appellee St. Jude Children's Research Hospital

Lincoln County Probate Court docket number 2020-0149
FOR CLERK REFERENCE ONLY