ELIZABETH ROYAL, ET. AL., APPELLANTS
FROM DECREE OF JUDGE OF PROBATE
FOR THE COUNTY OF SOMERSET
ALLOWING THE WILL OF LYMAN C. HURD, JR.

Somerset.   Opinion, December 5, 1956.

*Theodore Goyna,*
*Ernest L. Goodspeed,*
*Ian MacInnes,* for plaintiff.

*Linnell, Brown, Perkins,*
*Thompson & Hinckley,* for defendants.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, TAPLEY, JJ., MURRAY, A. R. J. BELIVEAU AND CLARKE, JJ., did not sit.

TAPLEY, J. On exceptions, Lyman C. Hurd, Jr., died at Waterville, Maine on January 4, 1954 while in his 74th year. He executed his last will and testament, dated February 12, 1952, at Boston, Massachusetts at the office of Israel N. Samuels, a practicing attorney and member of the Massachusetts Bar. The testator nominated Mr. Samuels as executor and directed that he be exempt from furnishing sureties on his official bond. Mr. Hurd made certain bequests, some of which could be classified as charitable, and named his two children, Lyman C. Hurd, III and Elizabeth Royal, as residuary legatees. These children, his residuary legatees, are contesting the will.

The will was presented for probate to the Judge of the Probate Court within and for the County of Somerset and State of Maine on petition of Israel N. Samuels, the named executor. A hearing was had before the Judge of Probate as to the allowance of the will and whether the named executor was qualified to act as such. A full and complete hearing was had involving these issues which resulted in a decree approving and allowing the will with appointment of Israel N. Samuels as executor. Dissatisfaction with these findings actuated the contestants to file an appeal to the Supreme Court of Probate. The necessary appeal and reasons of appeal were seasonably filed. The reasons of appeal alleged by the contestants are substantially as follows:

1. That the instrument dated the twelfth day of February, 1952, which was approved and allowed as the last will and testament of the late Lyman C. Hurd, Jr., was not in fact and in law his last will and testament.

2. That at the time of the alleged execution of the instrument purporting to be the last will and testament of

Lyman C. Hurd, Jr., he, because of his age, physical and mental disease and infirmity, was not of sound and disposing mind and did not have testamentary capacity in fact and in law.

3. That at the time of the execution of the instrument purporting to be the last will and testament of Lyman C. Hurd, Jr., he was old, frail, ill, both physically and mentally, and did not have the ability to resist undue influence which was exerted upon him in connection with the preparation and execution of his last will and testament.

4. That the alleged last will and testament of Mr. Hurd was designed and drafted by one Israel N. Samuels, acting in his capacity as attorney and counsellor for Mr. Hurd, and that the execution of the instrument was not the free and deliberate act of the testator but was the result of undue influence exerted upon him by his attorney, Mr. Samuels, who was also one of the attesting witnesses to the will and under its terms named executor without bond.

5. That Israel N. Samuels, appointed executor of the last will and testament of Lyman C. Hurd, Jr., is not legally competent to act in said capacity, is not a disinterested person and, further, is not a fiduciary satisfactory to the appellants in view of the nature and magnitude of the estate and in view of their interest therein as residuary legatees.

6. That the appellants as residuary legatees have no protection as a result of the decree of the Judge of Probate ordering the executor, Israel N. Samuels, to file a bond without sureties in the sum of $600,000.00 and approving such bond so filed, complaining that such order is completely inadequate and insufficient in view of all the circumstances of the case.

The contestants' exceptions are four in number, all based on the complaint and contention of legal error in the decree of the Supreme Court of Probate. The contestants argue as

to the first three exceptions that there is legal error in the decree because the findings are against the law and are not supported by the evidence but conversely are inconsistent with all of the credible evidence of probative value. The fourth exception concerns itself with the contention that the decree is erroneous, legally untenable and constitutes an abuse of judicial discretion.

The problem of this court is to review the evidence in order to ascertain if there was any evidence to support the findings of the justice below in his ruling that Lyman C. Hurd, Jr. was possessed of testamentary capacity on February 12, 1952; that there was no undue influence exerted upon him in connection with the preparation and execution of his last will and testament; that Israel N. Samuels is legally competent to act in the capacity as executor under the last will and testament of Lyman C. Hurd, Jr. and finally, does the finding of the presiding justice that the executor may furnish a bond in the penal sum of $600,000.00 without sureties constitute an abuse of judicial discretion.

### EXCEPTION 1. TESTAMENTARY CAPACITY

The burden of proving testamentary capacity rests upon the proponents. This rule is well established in this State, *Pliny Crockett, Applt.*, 147 Me. 173.

The question as to whether or not the testator was possessed of testamentary capacity is one of fact. *Chandler Will Case*, 102 Me. 72.

The contestants lay great stress on the testimony of Dr. Rupert A. Chittick to sustain their contention that Mr. Hurd, Jr. was lacking in testamentary capacity. Dr. Chittick is an acknowledged specialist in psychiatry. He first met Mr. Hurd in January of 1951 when he was admitted as a patient to the Vermont State Hospital where Dr. Chittick was superintendent. He remained a patient in the in-

stitution until March 23, 1951. Mr. Hurd was experiencing the effects of alcoholism and demonstrated the usual complications that many times arise from such a condition. The doctor was of the opinion that Mr. Hurd was suffering from a psychosis identified as Korsakoff's psychosis when he left the hospital in March of 1951. He then described the effect of such a disease in relation to the mental activity of the patient and the prospects of recovery from the damage brought about by such a condition. Cross-examination of Dr. Chittick produced some interesting testimony which may be considered in evaluating the opinion of the doctor:

"Q. Surely he would know, even if he suffered from this as you say he did, there would be certainly times when he would know about his business enough so that he could transact simple business, wouldn't he?

A. It is possible.

Q. Surely. And he could travel around himself alone, he could pay a hotel bill or something like that, couldn't he?

A. He probably could, yes.

Q. He could discuss business matters with attorneys, wouldn't you think?

A. He could discuss most any matters with anybody as far as that goes.

Q. And he could with reference to the truth of their existence, couldn't he?

A. I am sorry, sir, I don't understand.

Q. I say he would be able to discuss them with complete reference to the truth of their existence?

A. That one cannot be sure about. He might or he might not.

Q. You wouldn't say that if he owned a woodlot in Detroit, Maine that he couldn't talk with an attorney about the existence of that woodlot and his ownership of it, would you?

> A.  He might be able to discuss it perfectly proper
>     at times."

The materiality and relevancy of Dr. Chittick's testimony must be accepted in the light of the fact that his opinion is based on observations made during a period between January and the latter part of March of 1951 which was the only time the doctor was in contact with Mr. Hurd. There must be also borne in mind the fact that the will was executed on the twelfth day of February, 1952. The trial judge is asked to determine on the testimony of Dr. Chittick that Mr. Hurd, on February 12, 1952, was possessed of a legally unsound mind which would make him incapable of executing a will. The doctor by letter dated March 15, 1951 did express his opinion to Judge Davis of the Probate Court that Mr. Hurd at that time was mentally incompetent and that a guardian should be appointed. Nowhere in the testimony of Dr. Chittick does there appear a statement that on the twelfth day of February of 1952 Mr. Hurd was legally of unsound mind and lacking testamentary capacity.

*Martin, Applt.,* 133 Me. 422, at page 428:

> "The want of capacity, when urged as a ground for invalidating a testamentary act, must relate to the time of the act. Incompetency may exist before or after, and still the will be valid."

*Flood, et al. Applts.,* 139 Me. 178, at page 184:

> "The general rule whether evidence tending to show the insanity of a testator is too remote from the time of the execution of the will is a matter resting very largely in the discretion of the trial court."

The words of Chief Justice Fellows in *Waning, Applt.,* 151 Me. 239, at page 250, are most illuminating:

> "In law, every mind is sound that can reason and will intelligently, in the particular transaction being considered; and every mind is unsound or in-

sane that cannot so reason and will. The law investigates no further. This definition differentiates the sound from the unsound mind, in the legal sense. A disposing mind involves the exercise of so much mind and memory as would enable a person to transact common and simple kinds of business with that intelligence which belongs to the weakest class of sound minds; and a disposing memory exists when one can recall the general nature, condition and extent of his property and his relation to those to whom he gives, and also to those from whom he excludes, his bounty. Mere intellectual feebleness must be distinguished from unsoundness of mind. The requirements of a 'sound and disposing mind' does not imply that the powers of the mind may not have been weakened or impaired by old age or bodily disease. The weakest kind of a sound mind may make a will, but it must be a legally sound mind."

The attesting witnesses to Mr. Hurd's will were his attorney, Israel N. Samuels, Irving L. Morse, a real estate broker, and Michael A. DeSimone, a lawyer.

Israel N. Samuels is a lawyer, a member of the Massachusetts Bar and practicing in Boston. He became acquainted with Mr. Hurd, Jr. in 1943 and saw him infrequently until 1948 when he was retained by Mr. Hurd as an attorney to handle the administration of Mr. Hurd's sister's estate. During the administration of the sister's estate, Mr. Samuels had many occasions to confer with Mr. Hurd in reference to estate matters. Some discussions were had between them during 1951 or 1952 concerning a lumber business in which Mr. Hurd was financially interested. Mr. Samuels was also concerned in behalf of Mr. Hurd in the dismissal of the guardianship proceedings in the early part of June, 1951, Mr. Hurd having previously in March of that year been placed under guardianship. This dismissal took place by agreement of all parties concerned. Mr. Samuels stated that during the months of February

and March of 1951 he saw Mr. Hurd quite regularly. He, testified that Mr. Hurd handled his own bank account, which was of a substantial amount. The witness related conversation with Mr. Hurd concerning the estate of his sister, Edith Hurd, his Masonic and Knights of Pythias connections, politics and current events of mutual interest. Much discussion was had as to the provisions of his last will and testament before its drafting and execution. After Mr. Samuels recited the circumstances of his relationship with Mr. Hurd and some facts within his knowledge of Mr. Hurd's business activities, he testified that in his opinion Mr. Hurd at the time he executed his last will and testament was of sound mind.

Irving L. Morse, a real estate broker and an acquaintance of Mr. Hurd's for eight or ten years, testified that on February 12, 1952 in his opinion Mr. Hurd was of sound mind.

Michael A. DeSimone, a lawyer and the third witness to the will, corroborated the other witnesses with an opinion that Mr. Hurd at the time of the execution of the will was of sound mind.

Guardianship proceedings were instituted against Mr. Hurd in the Probate Court for Somerset County and on March 21, 1951 a guardian was appointed. Later in May of that year, on petition of the ward alleging that he was fully able to manage his own estate and that guardianship was no longer necessary and should be terminated, the Porbate Court decreed a termination of the guardianship by decree dated June 6, 1951. This termination of guardianship occurred without contest although all interested parties had notice of the proceedings.

There is substantial evidence to be found in the record to support the findings of the Justice of the Supreme Court of Probate on the question of testamentary capacity and so this exception must fail. *Waning, Applt., supra. Thibault,*

*Applt.* v. *Est. of Fortin,* 152 Me. 59. *Pliny Crockett, Applt., supra.*

### EXCEPTION 2. UNDUE INFLUENCE

This exception attacks the findings and conclusion of the justice below as to the element of undue influence. The burden of proof is on the party alleging undue influence. *Thibault, Applt., supra.*

*Rogers, Applt.,* 123 Me. 459, at page 461:

> "By undue influence in this class of cases is meant influence, in connection with the execution of the will and operating at the time the will is made, amounting to moral coercion, destroying free agency, or importunity which could not be resisted, so that the testator, unable to withstand the influence, or too weak to resist it, was constrained to do that which was not his actual will but against it."

The accusation of undue influence exerted against a testator in the preparation and execution of his last will and testament is one of great and serious moment. The evidence necessary to support such a contention must rise to a degree much higher than mere conjecture and surmise. Attorneys for the contestants in their brief say there is no direct proof of undue influence in the case but they believe the proven facts and circumstances are such that undue influence should be inferred. A careful scrutiny of the record fails to disclose there is any evidence showing the exertion of undue influence upon the mind of the testator. This exception is overruled.

### EXCEPTIONS 3 AND 4. COMPETENCY OF EXECUTOR. BOND.

Exceptions 3 and 4 pertain to the appointment of Israel N. Samuels as executor, claiming he is not legally competent to act in such capacity and to that portion of the decree

which directs him to furnish a bond in the sum of $600,-000.00 without sureties. The exceptors argue that Mr. Samuels is legally incompetent to act as executor because (1) he claims the decedent was indebted to him in the sum of $9,000.00 for legal services; (2) that there exists an antagonism of interest between themselves and Mr. Samuels as shown by the record and that from past experiences they cannot expect him to represent their best interests as beneficiaries of the estate; and (3) that part of his testimony as a witness is incredible, evasive, lacks sincerity and a reading of the record of his testimony will show lack of legal competency.

A charge of abuse of judicial discretion is made because the executor was ordered to furnish bond without sureties, the claim in substance being that the contestants received no protection as residuary legatees in view of all the circumstances indicated by the evidence.

The "Eighth" paragraph of the last will and testament of Lyman C. Hurd, Jr. nominates and appoints Israel N. Samuels as executor with the provision that he be exempt from furnishing any surety or sureties on his bond.

The pertinent portion of Sec. 9, Chap. 154, R. S. 1954, reads:

> "When a will is proved and allowed, the judge of probate may issue letters testamentary thereon to the executor named therein, if he is legally competent ***."

The contestants except to that portion of the decree that directs letters testamentary issue to Israel N. Samuels, the person nominated in the will as executor.

The statute provides that the Judge of Probate may issue letters testamentary to the executor if he is legally competent.

*Chadwick* v. *Stilphen,* 105 Me. 242, at page 247:

> "the executor named therein must be legally compe-
> tent *in the opinion of the judge of probate* ***."
> (Emphasis ours.)

The question of legal competency is one of determination by
the judge. If the opinion of the judge is based upon sup-
porting evidence, it is then not vulnerable to attack by ex-
ceptions. The evidence in this case on the qualifications of
the executor is of such quality that it supports the findings
and decree.

The provisions of the will are clear that it was the testa-
tor's intention his nominee for executor should be permitted
to qualify without the necessity of furnishing any surety or
sureties on his official bond. This direction, however, does
not bind the Judge of Probate but if upon consideration of
the evidence there appears no necessity to require bond with
sureties, he, no doubt, follows the intention of the testator.
The statute governing the question of giving bond with or
without sureties is found in Sec. 11, Chap. 154, R. S. 1954
and reads as follows:

> "BOND EXECUTOR SHALL GIVE.—Letters
> testamentary may issue and all acts required by
> law or otherwise under the provisions of the will
> may be done and performed by the executor with-
> out giving bond, or by his giving one in a specified
> sum, or without sureties, when the will so pro-
> vides; but when it appears necessary or proper,
> the judge may require him to give bond with sur-
> eties as in other cases."

This statute confers upon the court judicial discretion re-
garding executor's bonds and when it appears to the judge
that it is necessary or proper, he may require an executor
to give bond with sureties irrespective of a testator's ex-
pressed intention. The contestants contend that the judge
abused his discretion when he did not require the executor
to give bond with sureties.

*Chaplin, Applt.,* 133 Me. 287, at page 289:

> "It is settled law in this state that the findings of a Justice of the Supreme Court of Probate in matters of fact are conclusive if there is any evidence to support them. When the law invests him with the power to exercise discretion, that exercise is not reviewable on exceptions. If he finds facts without evidence, or if he exercises discretion without authority, his findings may be challenged by exceptions."

There is ample and sufficient evidence to support the findings of the justice below and to negative the charge that he abused his discretionary powers. Exceptions 3 and 4 are ineffectual.

*Exceptions overruled.*