ESTATE OF Helena L. MITCHELL[1].

Supreme Judicial Court of Maine.

Argued March 11, 1982.

Decided April 13, 1982.

1. We have recaptioned this case to conform to    M.R.Prob.P. 4(a) and Form N(102).

Crowley & Crowley, Robert E. Crowley (orally), Kennebunk, for Village Baptist Church and Thomas J. Reagan, Personal Representative.

Waterhouse, Carroll & Cyr, Robert N. Cyr (orally), Biddeford, for Kenneth R. Mitchell.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

NICHOLS, Justice.

Although not the first appeal from a probate court to reach us since the Probate Code [2] was enacted to become effective January 1, 1981, this appeal is well in the vanguard, and it is the first will contest decided under the Code to reach us. It is significant that so soon after codification we have the opportunity to declare the "clearly erroneous" standard of review by which on appeal we shall test the factual findings of a probate court.

From the order of the York County Probate Court dated August 27, 1981, disallowing the writing dated March 8, 1977, as the purported will of Helena L. Mitchell, late of Kennebunkport, the sole beneficiary under the purported will, Village Baptist Church, of Kennebunkport, and the Executor named therein, Thomas J. Reagan, appeal.

These Appellants challenge the finding of the Probate Court that Mrs. Mitchell lacked testamentary capacity when she executed the purported will on March 8, 1977.

Her son and sole heir-at-law, Kenneth R. Mitchell, who contested the purported will

in Probate Court, cross-appeals from that portion of the order which awarded costs to Village Baptist Church.

We affirm the judgment of the York County Probate Court.

Before we address the issues argued by the parties before us we must advert briefly to other aspects of the litigation. It is apparent from this record that there were, and probably are, in existence earlier wills executed by this decedent yet only the 1977 writing was offered for probate in this proceeding. Under pre-Code law a Probate Court was required to decide only whether the particular instrument identified in the petition should be admitted to probate. *Withee v. Rowe*, 45 Me. 571, 585 (1858). Now the Probate Code provides that formal testacy proceedings culminate in an order determining the decedent's "state of testacy," 18–A M.R.S.A. § 3–409, and expressly contemplates that "2 or more instruments" may be offered for probate before a final order is entered. 18–A M.R.S.A. § 3–410.

It is unnecessary in this appeal for us to decide, and we intimate no opinion whatsoever, as to whether the Code requires the several writings to be offered for probate in a single proceeding before the order is entered determining the decedent's state of testacy. Similarly, we can avoid for this appeal the question of whether, when only one of the several writings is offered for probate, a probate court's order on that one is a final judgment which may be appealed to this Court. M.R.Prob.P. 73. In the first place, our disposition of this appeal makes it unnecessary for us to interpret at this time the sections of the Probate Code cited above. In the second place, if such were not the result, because this was a proceeding pending in Probate Court when the Probate Code took effect [3], to the extent

2. The Probate Code, 18–A M.R.S.A. § 1–101 *et seq.* (1981) (enacted as P.L. 1979, c. 540), largely follows the Uniform Probate Code promulgated by the National Conference on Uniform State Laws and approved by the American Bar Association in August, 1969. *See generally* 8 *Uniform Laws Annotated* 281 *et seq.* (1972) and Maine Probate Law Revision Commission,

*Report of the Commission's Study and Recommendations Concerning Maine Probate Law* (1978).

3. This proceeding was commenced in January, 1980, by the filing of a petition for probate of will, seeking the allowance of the 1977 writing, as Mrs. Mitchell's last will, and following the procedure established under pre-Code law. It

that in the opinion of the Court "the interest of justice" would be served, we would be permitted to make the former procedure applicable in this case. 18–A M.R.S.A. 8–401(b)(2); M.R.Prob.P. 86(a).[4]

We turn now to the issues argued by the parties to this appeal. The Appellants' attack is two-fold. First, the Appellants allege error in the Probate Court's imposition of the burden of persuasion as to testamentary capacity.

■ The Probate Judge stated in his decision that the contestant has the burden of proving lack of testamentary capacity.[5] 18–A M.R.S.A. § 3–407. Whatever may have been his subsequent observations as to a burden of going forward with the evidence, the Probate Judge was correct in that earlier statement, and he correctly applied that statute to the evidence adduced in this case. He concluded that the weight of the testimony by the neurologist was "substantially greater" than the weight which could be given the more cursory testimony of the witnesses to the putative will.

■ Second, the Appellants assert that the Probate Court's finding of lack of testamentary capacity is not supported by sufficient evidence in the record. In a proceeding such as this we review for clear error the findings of fact by the Probate Court. Appeals from the probate courts to this Court are comparable to appeals from the Superior Court in civil actions. See 18–A M.R.S.A. § 1–308; Maine Comment to § 1–308. The Legislature has delegated to the probate courts the responsibility for determining facts in formal proceedings. See 18–A M.R.S.A. § 3–409. In accordance with the legislative design, we shall not assume the fact-finding authority where, as here, there is a choice between two permissible views of the weight of the evidence. See Harmon v. Emerson, Me., 425 A.2d 978, 982 (1981); Dunton v. Eastern Fine Paper Company, Me., 423 A.2d 512, 517 (1980); Field, McKusick & Wroth, Maine Civil Practice § 52.7 (1970 and Supp.1981).

The same test heretofore applied to findings of fact by the Supreme Court of Probate, In Re Longworth, Me., 222 A.2d 561, 564 (1966), is now to be applied to findings of a probate court brought directly here on appeal under § 1–308 of the Code: Those factual findings stand unless "clearly erroneous."

■ A testator possesses sufficient testamentary capacity if he has, at the time when he executes his will, a sound mind: that is, if he has

a knowledge, in a general way, without prompting, of his estate, and an understanding of the disposition he wished to make of it by his will, and of the persons and objects he desired to participate in his bounty.

In re Will of Loomis, 133 Me. 81, 85, 174 A. 38, 41 (1934).

■ In the case before us there is competent evidence to support the Probate Court's finding of a lack of testamentary capacity. A neurologist, who examined Mrs. Mitchell on the day before she executed the 1977 writing, testified that Mrs. Mitchell was suffering from a rapidly deteriorating mental condition and did not have the ability to handle any kind of financial decision. From evidence of a deteriorating mental condition that is permanent and pro-

---

was not a formal testacy proceeding under the Code. 18–A M.R.S.A. § 3–401 et seq. See Form DE–202.

4. See generally 2 R. Wellman, Uniform Probate Code Practice Manual (2d ed.) 602 (1977).

5. This differs from the pre-Code rule which placed upon the proponent of the will the burden of proving testamentary capacity. In re Leonard, Me., 321 A.2d 486 (1974). As we have seen, the Probate Code applies to any proceedings pending on January 1, 1981, unless

the Court finds that the former procedure should be applied in a particular case in the interest of justice or because of infeasibility of application of the procedure of the Code. 18–A M.R.S.A. § 8–401. Where, as here, the Probate Court makes no such finding and the record provides no basis for a finding that the former procedure for allocating the burden of proving testamentary capacity should apply, this burden should be imposed in accordance with the Probate Code. See In re Guardianship of Kesler, 612 P.2d 357, 359 (Utah 1980).

gressive, the fact finder may infer that this condition continued through the time when the purported will was executed. *Martin, Appellant,* 133 Me. 422, 433–34, 179 A. 655, 662 (1935).

■ Next turning to the contestant son's cross-appeal, the son challenges the award by the Probate Court of "costs, including reasonable attorney's fees" to the proponent, Village Baptist Church. This challenge lacks merit.

18–A M.R.S.A. § 1–601[6] and M.R.Prob.P. 54(d)(1) authorize the award to either party of costs incurred in contested cases in probate court. Both that statute and that rule place the award of costs largely within the discretion of a probate court. 18–A M.R. S.A. § 1–601 and M.R.Prob.P. 54(d)(1) provide for the "allowance of a broad range of actual costs." Advisory Committee's Note to M.R.Prob.P. 54. M.R.Prob.P. 54(g) incor-

porates M.R.Civ.P. 54(g) and provides for the allowance of various actual and reasonable costs on depositions in the court's discretion. *Id.* We review the Probate Court's award of costs under 18–A M.R.S.A. § 1–601 for an abuse of discretion. *See In re Deehan's Will,* 130 Me. 243, 245, 154 A. 645, 646 (1931). In the case before us we find no such abuse.

The entry must be:

Appeal and cross-appeal denied.

Judgment affirmed.

All concurring.

---

**6.** 18–A M.R.S.A. § 1–601 provides:

In contested cases in the original or appellate court of probate, costs may be allowed to either party, including reasonable witness fees, cost of depositions, hospital records or medical reports and attorney's fees, to be paid to either or both parties, out of the estate in controversy, as justice requires. In those cases where a will is being contested on the grounds of undue influence or mental capacity, attorney's fees and costs shall not be allowed to the party contesting the will if he is unsuccessful.

18 M.R.S.A. § 551, repealed by P.L. 1979, c. 540, § 24–C, effective January 1, 1981, was the predecessor of and is couched in language nearly identical to 18–A M.R.S.A. § 1–601.