1999 ME 156

Estate of Frank T. SIEBERT, Jr.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 14, 1999.

Decided Oct. 29, 1999.

Jonathan B. Huntington, Douglas M. Smith, Eaton, Peadbody, Bradford & Veague, P.A., Dover–Foxcroft, for appellant.

Brent R. Slater, Bangor, for appellees.

Nathan Dane III, Bangor, did not file a brief.

Andrew Ketterer, Attorney General, Linda J. Conti, Asst. Attorney General, Augusta, did not file a brief.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Bryant Richard Garrett appeals from a judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) granting a petition for probate of a will of Frank Siebert, Jr., dated November 25, 1997. Garrett contends that the court applied an improper standard in determining Siebert's testamentary capacity and that the court's factual finding that he possessed testamentary capacity was clearly erroneous. Finding no error, we affirm the judgment.

[¶ 2] The relevant facts may be summarized as follows: Decedent, Frank T. Siebert, Jr., a pathologist and a scholar of Penobscot Indian linguistics, died on January 23, 1998, at the age of 85. At the time of his death, he was divorced with two daughters, both of Pennsylvania, and resided at Ross Manor, a continuing care facility in Bangor. Garrett and his wife had been working closely with Siebert for a number of years prior to his death on his Penobscot Indian projects.

[¶ 3] Upon his death, Siebert's two daughters filed an informal petition for probate of a will dated November 25, 1997, in which he named his two daughters as

personal representatives. Garrett filed with the Probate Court a formal petition of probate, requesting the court to appoint him or another person as special administrator of Siebert's estate based on a prior will dated June 17, 1997, in which Siebert named Garrett as personal representative. Garrett contested the November will on the basis that it was invalid. The only practical differences between the June will and the November will are the change in the provision appointing personal representatives and a change in the provision assigning the task of editing and publishing the Penobscot Legends, Volume Two, the Penobscot Dictionary, and the Native American Field Work recordings. After a hearing, the Probate Court entered an order admitting the later will to probate, and Garrett now appeals.

[¶ 4] This is a direct appeal from the Probate Court. *See* 18–A M.R.S.A. § 1–308 (1998). Garrett challenges Siebert's testamentary capacity. As the contestant to the will, he "bear[s] the burden of proving that probate should not be ordered because of 'lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation.'" *Estate of Dodge,* 576 A.2d 755, 756 (Me.1990) (quoting 18–A M.R.S.A. § 3–407).

[¶ 5] Garrett first contends that the Probate Court erred as a matter of law and applied the wrong standard for determining Siebert's testamentary capacity. The Probate Court described testamentary capacity in the following terms:

So far as testamentary capacity goes, the cases interpreting the statutes seem to give the testator/testatrix a chance to do pretty much what he/she wants to do by way of testamentary devise, provided such person knows that it is a will that is being executed, knows the general nature and extent of the estate, and knows who the natural objects of bounty are. Testamentary capacity has a low threshold which is easily crossed by a person making a will.

Garrett argues, however, that the proper standard adopted by this Court is as follows:

"A 'disposing mind' involves the exercise of so much mind and memory as would enable a person to transact common and simple kinds of business with that intelligence which belongs to the weakest class of sound minds; and a disposing memory exists when one can recall the general nature, condition and extent of his property, and his relations to those to whom he gives, and also to those from whom he excludes, his bounty. He must have active memory enough to bring to his mind the nature and particulars of the business to be transacted, and mental power enough to appreciate them, and act with sense and judgment in regard to them. He must have sufficient capacity to comprehend the condition of his property, his relations to the persons who were or should have been the objects of his bounty, and the scope and bearing of the provisions of his will. He must have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them."

*In re Leonard,* 321 A.2d 486, 488–89 (Me. 1974) (quoting *Hall v. Perry,* 87 Me. 569, 572, 33 A. 160, 161 (1895)); *see also Estate of Rosen,* 447 A.2d 1220, 1222 (Me.1982). Reviewing the various formulations of the test for testamentary capacity, we find that the Probate Court sufficiently paraphrased the test and thus applied the proper standard for determining testamentary capacity. *See Estate of Mitchell,* 443 A.2d 961, 963 (Me.1982) (quoting *In re Will of Loomis,* 133 Me. 81, 85, 174 A. 38, 41 (1934)).

[¶ 6] Garrett also challenges the court's finding that Siebert possessed testamentary capacity. Testamentary capaci-

ty is an issue of fact. *See Appeal of Royal,* 152 Me. 242, 245, 127 A.2d 484, 486 (1956); *Appeal of Waning,* 151 Me. 239, 251, 117 A.2d 347, 354 (1955). In a direct appeal from the Probate Court to this Court, the Probate Court's findings of fact stand unless clearly erroneous. *See Estate of Mitchell,* 443 A.2d 961, 963 (Me.1982). We will not assume fact-finding authority where there is a choice of two permissible views of the weight of evidence. *See id.* Because Garrett as the contestant had the burden of proving lack of testamentary capacity, and the Probate Court found that Siebert possessed said capacity, the Probate Court's findings concerning testamentary capacity will not be disturbed unless the evidence compelled a different result than that reached. *See Estate of Dodge,* 576 A.2d 755, 756 (Me.1990).

[¶ 7] Contrary to Garrett's contention, there is competent evidence that the Probate Court was justified in concluding that Siebert possessed testamentary capacity. It had the testimony of the scrivener, Nathan Dane, III, Esq., who testified that he visited Siebert at Ross Manor four times from November 3, 1997, to November 25, 1997, concerning his power of attorney and will. He testified that at all times Siebert was sitting up and recognized him; that on two separate occasions he went over each provision of the will with Siebert, asking him whether it was his wish, and that Siebert would listen intently and verbally respond yes in an assertive voice; that Siebert also verbally responded yes to the questions whether he was prepared to sign his will and whether he acknowledged the document to be his will. Dane also testified that, during those discussions, Siebert appeared to know the members of his family, and, although they did not go into great detail about his assets, because of Siebert's gruff businesslike manner, they did discuss what he owned in relation to the specific devises in the will. Dane testified that there was no question in his mind that Siebert was aware that he was signing his will.

[¶ 8] The court also had the testimony of Siebert's financial advisor, Richard Stolkner, a financial consultant with A.G. Edward, who testified that he had known Siebert since 1982 when he became his client, that he had visited with him regularly to discuss his financial matters, and that he visited him at Ross Manor in 1997 near the time he executed his will. Stolkner testified that Siebert did not behave abnormally during the 30–45 minute visit. Stolkner testified that Siebert recognized him when he arrived, that he indicated he did not like being in the nursing home, and that he asked questions about his investments. Stolkner also testified that Siebert, during their visit, discussed his two daughters.

[¶ 9] The court also had the testimony of Siebert's neighbor of eight to ten years, Donald Spencer. Spencer testified that he saw Siebert several times a week when he lived at home in Old Town, because Siebert enjoyed reading Spencer's newspaper after he had finished with it. He also testified that he visited Siebert at Ross Manor in November 1997 just before Thanksgiving to deliver a lobster roll his wife had made and that Siebert did not behave any differently than he had for the eight to ten years they had known each other. Spencer testified that Siebert greeted him by name, asked about Spencer's wife by name, and mentioned his daughters and the controversy with Garrett about who was going to be in charge of his property.

[¶ 10] Garrett argues that the Probate Court failed to evaluate Siebert's memory function, ignoring the medical records and testimony. Certain evidence suggested that Siebert may have had difficulty remembering certain things and performing certain tasks at different times and that he may not have been as detail-oriented as he once had been. Notwithstanding that evidence, the Probate Court could have found, based on the evidence of the will itself and the attorney who prepared the will, as well as the testimony of Siebert's

neighbor and his financial advisor, that Siebert at least knew the general nature and extent of his property and the natural objects of his bounty. Determinations of credibility and the weight of the evidence are within the sole province of the fact finder. *Appeal of Waning,* 151 Me. 239, 253, 117 A.2d 347, 355 (1955). Although there may be conflicting testimony susceptible to two permissible views, the evidence does not compel a finding that Garrett, as the contestant, overcame the presumption of testamentary capacity. *See Estate of Dodge,* 576 A.2d 755, 757 (Me.1990); *Estate of Mitchell,* 443 A.2d 961, 963 (Me. 1982).

The entry is:

Judgment affirmed.