STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS                            CIVIL ACTION
                                        DOCKET NO. AP 15-14

ELIZABETH JALBERT,
        Petitioner

        v.                              DECISION

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM,
        Respondent


Petitioner Elizabeth Jalbert petitions for judicial review, pursuant to M.R. Civ.

P. 80C, the Final Decision of the Board of Trustees ("Board") of the Maine Public

Employees Retirement System ("System") denying Petitioner disability retirement

benefits. Petitioner contends that she presented significant evidence establishing

that she suffers from permanent disabilities associated with post-concussive

syndrome, depression, and anxiety that render it impossible for her to carry out the

duties of her teaching job. She contends that the Board's denial of benefits violates

statutory provisions, is not supported by substantial evidence on the record as a

whole, is affected by errors of law, and is arbitrary and capricious.

Petitioner explains that she is a hard-working, single mother who has

worked for approximately twenty-four years as a teacher, despite her long-term

depression. Petitioner has worked since the age of 14 or 15 and has spent the

majority of her working life at the Dike-Newell Elementary School, at which she

received numerous positive evaluations and an upstanding reputation throughout

the years. In 2004, Petitioner applied for disability benefits with the System due to

1

bi-polar disorder and anxiety, but withdrew the application after her health improved thanks to consultations with her psychiatrist, Lawrence Fischman, M.D. Over the next eight years, Petitioner used sick leave, but never missed work due to depression.

On January 21, 2012 and nine days later on January 30th she fell twice hitting her head each time. This resulted in a diagnosis of post-concussive syndrome which impacted Petitioner's ability to perform her job. In particular, she was having difficulties with vision, headaches, dizziness, fatigue, and speaking. Petitioner also experienced difficulties reading, was bothered by noise, lost her social life, and became dependent on her husband for assistance in many, often mundane matters.

Petitioner's lifelong friend and co-teacher, Kathy Henrickson and Ms. Henrickson's daughter, Jenner Rice provided unchallenged background information, eye witness accounts, and examples of how Petitioner was transformed from a self-sufficient teacher into a shadow of her former self following the falls.

Petitioner submitted evidence by Dr. Morse, allegedly one of the most respected neuropsychologists in Maine. Dr. Morse found, in pertinent part, that Petitioner was diagnosed with post-concussive syndrome and that her two head injuries close in time increased the risk of recovery difficulties. He diagnosed Petitioner with persistent post concussive syndrome and supported this opinion by pointing to Petitioner's complaints, her observed functioning difficulties—before and after the falls—by Ms. Henrickson, and her neuropsychological testing. He explained Petitioner's functional limitations as: 1) having to very carefully plan every step of the day in advance to avoid memory and concentration problems; 2)

2

frequently requiring breaks and naps due to fatigue; 3) difficulty multi-tasking and switching gears; 4) difficulty expressing herself clearly and fluently; 5) difficulty reading for any length of time; and 6) difficulty processing visual information. Dr. Morse also concluded that "[i]t is impossible for her to perform her duties as a school teacher" and that in his "neuropsychological opinion it is more likely than not that her incapacity is permanent."

Carl S. DeMars, M.D., her primary care provider, examined Petitioner after her two falls, referred her to John A. Taylor, D.O.—Petitioner's treating neurologist—and concluded that Petitioner is unable to work as a teacher, and many other occupations, due to her inability to concentrate and her speech difficulties. Dr. DeMars stated that Petitioner's functional limitations prevent her from concentrating on more than one thing at a time and require her to take longer to complete tasks. Dr. DeMars stated that Petitioner obtained maximal improvement, but is still unable to return to her prior occupation as a teacher..

David C. Lilly, Psy. D., her cognitive behavioral therapist, noted that his findings have been consistent with Dr. Morse's findings in that he observed presentation, communication, and rapportive impairment in daily functioning, although his observation does not constitute an objective or standardized assessment. Dr. Lilly noted that he was not concerned about "malingering" and found Petitioner's efforts in session to be very strong and her work applying strategies to improve functioning and reduce symptoms excellent.

Colin Robinson, O.D., provided an opinion regarding Petitioner's vision and balance issues arising from her post-concussive syndrome. In particular, Dr.

3

Robinson opined that most of Petitioner's functional visual problems are caused by the partial disconnect of her central, focal visual system and peripheral ambient visual system, which can occur after a neurological event. Petitioner's visual problems, however, do not show up on any medical scans.

Maureen R. Halmo, Ph.D., who was treating Petitioner for mental health issues long before her falls, supported her application, but was totally ignored by the Medical Board. Dr. Halmo opined that following Petitioner's second fall, it was clear that she was suffering significant difficulties in communication, and that this was a significant change from her past behavior. Whereas Petitioner could formerly manage a full psychotherapy hour, her energy now waned after thirty minutes. In addition, Dr. Halmo found Petitioner' ability to multitask was diminished, she experienced significant fatigue, and suffered from headaches. Dr. Halmo opined that it is very difficult for her to see how Petitioner could perform as a teacher and hard for her to imagine her improving to the extent that the impairments would not get in her way as a teacher in the future.

Dr. John A.Taylor, D.O., neurologist, found, in pertinent part, that he does not believe Petitioner can perform the essential activities needed to be a school teacher because she lacks the cognitive skills and has difficulty in multiple domains including attention and concentration, which leads to problems with working memory, which leads to problems multitasking and cognitively shifting. Dr. Taylor found that this "makes it inappropriate for [Petitioner] to work in the fast place [sic] and challenging setting of a school system." Dr. Taylor noted that in addition to the cognition problems, Petitioner also has problems with vestibular dysfunction,

4

premorbid anxiety, and depression. He stated at deposition, that while various forms of therapy have helped Petitioner make a recovery, she has presently stagnated. Dr. Taylor concludes that it is unlikely Petitioner will make significant enough gains to be able to return to work as a school teacher in any capacity, based in part on her problems with concentration, speech, and vestibular ocular dysfunction. Dr. Taylor also explained, at his deposition, that people with anxiety and depression—such as Petitioner—are more likely to have worsening anxiety and depression after post concussive syndrome and that it is unlikely she will recover enough to return to work. He stated that at this point, Petitioner's problems have gone on long enough that he doesn't think she is going to recover significantly enough to go back to work. Petitioner contends that Dr. Taylor also concurred with the findings of Petitioner's other health care providers and disagreed with those of the Medical Board.

The System acknowledges that there is factual evidence in the record supporting the award of disability retirement benefits to Petitioner. However, the System claims that Petitioner misrepresents the record when it contends there is *no* factual support for the decision adopted by the Board (the "Board's Decision" or "Decision").

The System starts by discussing Petitioner's 2004 application for disability benefits. The Decision explains that Petitioner received psychiatric care for many years and "certainly as long ago as 1996 when Andrew Cook, M.D. was treating her for bipolar illness. It also found that Petitioner has been treated by Laurence Fischman, M.D., a psychiatrist, for a condition also identified as bipolar through at

5

least November 2012.[1] Petitioner's 2004 disability application was based on the medical condition of bipolar disorder, as well as anxiety, stress impacting hypertension and other health conditions, pre-diabetes, and irritable bowel syndrome. In support of the application, Petitioner submitted a letter from Dr. Fischman in which he described Petitioner's functional limitations as follows:

> Her functional limitations in relation to classroom teaching include: difficulty concentrating; difficulty trying to attend to two or more things at once, or "multi-tasking," difficulty planning and creating lesson plans; difficulty following or comprehending conversations; difficulty meeting standards for learning objectives; difficulty reconciling demands of students, students' parents and school principal; difficulty tolerating aberrant behavior of students; difficulty implementing suggestions of principal; difficulty maintaining her composure in the classroom.

Petitioner's primary care provider, Dr. DeMars also submitted a letter in support of her 2004 application stating that she could not work as a primary teacher because of her depression. In the spring of 2005, Petitioner returned to teaching and withdrew her application. Thereafter, the Decision cited to evidence indicating that Petitioner remained in treatment for depression, stress, and anxiety.

Respondent then quotes the portion of the Board's Decision discussing Petitioner's post-concussive syndrome. The Decision analyzes the numerous medical visits and treatment received following her two falls in late January 2012. The findings recognize Petitioner's diagnosis with post concussive syndrome, but also discuss findings that Petitioner's head injuries were mild and that she was making improvements with therapy and starting to feel better for a time. The Decision then discusses how Petitioner's employer sought to have her return to

---

[1] In March, 2011, Petitioner switched to Maureen R. Halmo, Ph.D., for psychotherapy, remaining with Dr. Fischman for medication management.

6

work with modified duties, but Petitioner was not sure she could handle going back to work as requested. It was around this time that Dr. Taylor found Petitioner's recovery plateaued and sent her to see Dr. Morse, who encouraged her to increase her working activity and to work with her employer on a job description that made her comfortable. The Decision then explained how Dr. Morse noted that Petitioner was having problems with reading, but was performing quite well on many measures and could benefit from seeing a neuro-optometrist for her vision problems. The Decision also noted that Dr. Morse found Petitioner's anxiety may have exacerbated her attention difficulties. Finally, the Decision noted that on February 1, 2013, Petitioner's speech therapist said Petitioner had met her goals and her communication skills are within functional limits with no evidence of word finding deficits or dysfluency .

The Board's discusses Petitioner's employment history and how she has performed very well throughout the years. The Decision noted how, upon her return, Petitioner was given modified duties that involved working in small groups or one-on-one with students in kindergarten and first grade who were behind in their reading ability. The school principal described the position as much less demanding and stressful than Petitioner's previous position teaching second grade. However, Petitioner's work did not progress as anticipated and she requested a part-time work schedule that was not feasible given the students' needs. This plan was not approved and shortly thereafter, Petitioner was medically excused from work and has not returned.

With regard to Petitioner's post-concussive syndrome, the MainePERSMedical Board noted that Dr. Taylor's neurological examination was mainly normal with the exception of the mental status examination, which showed Petitioner had some difficulty with attention span, hesitation of speech, and dysfluency. The Medical Board agreed that this was consistent with post-concussive syndrome, but also pointed out that Petitioner's condition improved with time and therapy and that he thought—at one point, at least—that she would get better. The Medical Board then discussed how Petitioner's reports to Dr. Taylor was described as normal except for some dysfluency and that Petitioner appeared to do well on a variety of cognitive measures when tested by Dr. Morse. Next, the Decision noted how following Petitioner's return to part-time teaching, there was no specific description of the difficulties Petitioner contends she faced. Although Petitioner was taken out of work and Dr. DeMars described her as having progressively worsening anxiety, Dr. Taylor's subsequent records revealed her speech and overall mental status were normal. It also notes that Dr. Taylor did not provide an explanation for Petitioner's apparent plateau in recovery. Accordingly, the Medical Board determined that the records did not clearly show Petitioner had any persistent disabling symptoms that could be directly ascribed to the post-concussive syndrome. On this basis, the Medical Board did not find functional limitations based on post-concussive syndrome and further found that psychiatric issues and secondary gain could have contributed to Petitioner's separation from work. [2]

---

[2] This finding is suspect as there is supporting psychiatric evidence in the record and no evidence of any member of the Medical Board ever meeting or examining Mrs. Jalbert.

8

The Board then discussed the Medical Board's finding that there were inconsistent and unsupported medical opinions along with evidence of subjectivity and bias. In particular, the Medical Board noted a dichotomy between Petitioner's subjective complaints and the evidence of her longstanding mood disorder on the one hand, and the absence of notable deficits from formal cognitive testing by Dr. Morse, on the other. In addition, the Medical Board critiqued the adequacy of the foundation of Dr. Morse and Dr. Demars' opinions because they relied on Petitioner and Ms. Henrickson's opinions. The Medical Board further critiqued Dr. Taylor's deposition testimony with his previous statements and the latest neuropsychological testing, and also observed that Dr. Taylor did not explain Petitioner's decline in functional abilities over time, which is inconsistent with the typical course of post-concussive syndrome.[3] The Medical Board also found that with respect to Petitioner's depression and anxiety, the record shows her anxiety is well-managed and there were no functional limitations from those conditions as of her last date in service.

The Board's explains that Petitioner's argument rests on evidence related to post concussive syndrome and comorbid anxiety and depression. It found, however, that a careful review of the evidence throw four facts into question: 1) the evidence contemporaneous with the occurrence of the two head injuries indicates the impacts were mild; 2) the results of neuropsychological testing by Dr. Morse showed only mild impairment in a limited area of mental function; 3) Petitioner's decline in functional capacity occurring over time after the falls is inconsistent with

[3] The Medical Board also noted that there were no opinions in the record that Petitioner's diabetes, hypertension, or asthma resulted in functional limitations.

9

the usual course for her diagnosis and is unexplained; and 4) the functional impairments alleged in the application resemble the impairments Petitioner asserted in her 2004 application for disability retirement benefits.

Regarding the mild impacts of Petitioner's head injuries, the Board cites records from the Emergency Department in which the attending physicians described the injures as a "mild head injury" and a "closed-head injury – minor." In addition, there was no loss of consciousness in the first fall and, in the second fall, the possibility of a transient alteration of consciousness. This evidence, the Board found, does not support an inference that the impact were considered serious or significantly injurious by the practitioners who evaluated Petitioner after the falls and is inconsistent with Petitioner's argument that her post concussive syndrome has resulted in significant functional limitations that make it impossible for her to return to teaching.

Addressing Petitioner's impairment on evaluations of cognition and speech, the Board found that Petitioner's testing, when reviewed by Dr. Morse, showed she is performing quite well on a wide range of cognitive measures. While attention and concentration were one of the areas in which Petitioner had the greatest difficulty, Dr. Taylor noted that Petitioner did quite well overall in a cognitive assessment. In addition, Petitioner' speech therapist noted that upon her discharge, she had no trouble finding words and no dysfluency. As a result, the Board found that on the whole, the formal medical evaluation of Petitioner does not support the existence of significant impairment.

10

Regarding Petitioner's "unexplained decline," the Board notes that when Dr. Taylor saw Petitioner in February 2012, he wrote that she did quite well overall on a cognitive assessment and expected Peitioner's problems would resolve and she could return to work as usual. In addition, Petitioner's speech therapist noted that, following Petitioner's treatment, her skills were within functional limits and there was no evidence of word finding deficits or dysfluency. This evidence, combined with Dr. Taylor's testimony that the vast majority of patients with post concussive symptoms improve over time, and that deterioration in cognitive ability with post concussive syndrome is not probable, raised questions regarding Petitioner's plateau in her recovery. The record does not adequately explain Petitioner's recovery plateau.

The Board then discusses how Petitioner's 2004 application for disability retirement benefits lists very similar functional limitations to those asserted in 2014. In particular, the limitations involve problems concentrating, paying attention, memory, and processing speed. The Board concludes that this indicates Petitioner has had difficulties with attention, concentration, and multitasking for many years, but was able to perform in an exemplary fashion as a primary teacher for many years. This evidence, the Board concluded, does not support Petitioner's argument that she is unable to perform the essential duties of her position.

Petitioner contends that her 2004 disability application is not related to her present application except insofar as her underlying depression and anxiety have been exacerbated by her post-concussive syndrome. Petitioner contends that while the Medical Board quotes from Dr. Lilly in support of its position that Petitioner

11

does not suffer from anxiety, it disregards the fact that Dr. Lilly concurs with Dr. Morse regarding the nature of her disability, functional limitations, and truthfulness. The Hearing Officer, Petitioner points out, does not even acknowledge Dr. Lilly's findings. Petitioner contends the Medical Board erred by rejecting Dr. Robinson's entire practice as neither scientifically validated nor generally accepted. The Hearing Officer again, is silent regarding Dr. Robinson's findings. The petitioner notes Dr. Halmo's testimony is consistent with Ms. Henrickson's, but rather than address this testimony, the Medical Board and Hearing Officer do not discuss his findings.

Taken as a whole, the Board contends that the record does not prove by a preponderance of the evidence that Petitioner suffers from functional limitations making it impossible for her to perform the essential duties of her position.

The Court reviews the Board's Decision for an abuse of discretion, error of law, or findings not supported by the evidence. *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 12, 977 A.2d 400 (citation omitted). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Id.* (quoting *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258). Where a petitioner challenges the findings in an administrative decision, the petitioner "cannot prevail unless [s]he shows that the record compels contrary findings." *Id.* (quoting *Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 8, 870 A.2d 566). "Inconsistent evidence will not render an agency decision unsupported." *Id.* (quoting *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551); *see also Dodd v. Secretary of State*, 526 A.2d 583, 584

12

(Me. 1987) ("The court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result"). Stated differently, a "party seeking review of an agency's findings must prove that they are unsupported by any competent evidence." *Maine Baker's Ass'n v. Bureau of Banking*, 684 A.2d 1304, 1306 (Me. 1996). Furthermore, the court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion.'" *Lewiston Daily Sun v. Maine Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344 (quoting *Crocker v. Maine Unemployment Ins. Comm'n*, 450 A.2d 469, 471 (Me. 1982)).

The party seeking to vacate an agency decision bears the burden of persuasion. *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676. "When an agency concludes that the party with the burden of proof failed to meet that burden, [the court] will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference." *Id.* (quoting *Hale–Rice v. Me. State Ret. Sys.*, 1997 ME 64, ¶ 17, 691 A.2d 1232).

Petitioner raises three arguments in support of her petition. First, she contends the Board's Decision was not supported by substantial evidence in the record as a whole because the entire record, "[o]ther than a few pages of notes from the Medical Board, an entity which has never laid eyes on [Petitioner]," supports granting Petitioner benefits. Petitioner then contends that the Board's reliance on the Medical Board's interpretation of the evidence flies in the face of common sense and does not support the Board's finding. (citing *Kelley v. Maine Public Employees*

13

*Retirement System*, 2009 ME 27, ¶ 16, 867 A.2d 676; *Anderson v. Maine Public Employees Retirement System*, 2009 ME 134, ¶ 28, 985 A.2d 501).) Petitioner insists that every doctor that has treated her, and every lay witness who has testified, has indicated Petitioner should receive benefits.

Petitioner contends the Board's Decision committed errors of law and was arbitrary and capricious because it did not consider Petitioner's post-concussive syndrome in combination with her preexisting depression and anxiety. Instead, the Medical Board created two distinct memos to discuss the conditions of post concussive syndrome on the one hand, and depression and anxiety on the other. Petitioner contends that this individual analysis is at odds with the medical reality of Petitioner's disability as demonstrated by her health care providers. Petitioner then contends that the hearing officer, and subsequently the Board, adopted the Medical Board's failure to consider the combination as a basis for Petitioner's disability. Rather than consider the conditions in combination, Petitioner asserts that the hearing officer "launches into an analysis based on his own formulated premises: mild impacts, minimal impairment, evaluations of cognition and speech, unexplained decline, and 2004 application." This, Petitioner argues, violates *Hale-Rice v. Maine State Retirement System*, 691 A.2d 232 (Me. 1997), is arbitrary and capricious, constitutes an abuse of discretion, and requires reversal.

Petitioner contends that public policy requires Petitioner's application be granted because,

> In a case like this one, where a member is completely disabled, the denial of disability retirement benefits by the System destroys the faith of its individual members in the System's statutory responsibility to provide benefits to deserving members, rather than to profit from their years of faithful service and subsequently thrust these members

14

out the door without benefits when they are too disabled to perform the duties of their jobs."

The System counters that to some extent, all of Petitioner's claims challenge the findings of fact made by the hearing officer and the weight accorded those facts. Those credibility determinations, however, are exclusively the province of the finder of fact and will not be disturbed absent a lack of supporting evidence or an abuse of discretion. (citing *Sprague v. Maine Unemployment Ins. Comm'n*, 544 A.2d 728, 732 (Me. 1988); *Estate of Siebert*, 1999 ME 156, ¶ 10, 739 A.2d 365).) While the System acknowledges that another hearing officer might have reached a different conclusion, it contends that "it cannot be said that this hearing officer acted unreasonably when he found the facts as he did, leading him to the conclusions he made."

This is because the credibility of Dr. DeMars and Dr. Fischman, who support Petitioner's claim for disability, was undermined by the fact that they previously supported Petitioner's claim for disability in 2004, when the record indicates that she was able to work, and work well, after 2004. In addition, the System argues that the similarity in purported functional limitations casts serious doubt on Petitioner's arguments that her symptoms are related to her minor head injuries in 2012. Furthermore, the System explains that while it is clear that Petitioner suffers from anxiety and depression, those conditions were kept well under control for a number of years. It also contends that to the extent Petitioner experienced the same symptoms in 2011-12 that she had in 2004, it is not unreasonable to assume that her increased anxiety was due to stressors at the time, not the 2012 falls.

15

Petitioner argues that the System essentially argues it expected Petitioner's symptoms to improve over time and, because they did not, Petitioner did not have a significant disability. Petitioner argues it is nonsensical to point to Petitioner' lack of recovery as evidence that she is not disabled or is manufacturing her symptoms. In any event, Petitioner is not required to prove why she has not reached pre-injury functionality, only that she has attempted recommended treatment and continues to suffer from the disability. Petitioner then reiterates that Petitioner's continued disability is due in part to the fact that she suffers from anxiety and depression in addition to post concussive syndrome. Petitioner contends the record demonstrates that these conditions can exacerbate post concussive syndrome and demonstrate Petitioner's continued disability. The Board, however, did not accept this clearly established argument and in so doing abused its discretion. Finally, Petitioner contends that the System's focus on her previous disability application is nothing more than an attempt to justify an arbitrary and capricious finding. "Realistically, memos of the [Medical] Board, which run contrary to all other evidence on the record, are not enough to controvert the substantial evidence which is consistent with a finding of permanent disabling conditions...."

5 M.R.S. § 17924 provides that "a member qualifies for a disability retirement benefit if disabled while in service and...before normal retirement age." Section 17921(1) defines "disabled" as meaning:

> [T]he member is mentally or physically incapacitated under the following conditions:
>
> A. The incapacity is expected to be permanent;
>
> B. That it is impossible to perform the duties of the member's

16

employment position [i.e. functional limitations];

    C.  After the incapacity has continued for 2 years, the incapacity must render the member unable to engage in any substantially gainful activity for which the member is qualified by training, education or experience; and

    D.  The incapacity may be revealed by examinations or tests conducted in accordance with section 17926.

5 M.R.S. § 17921(1).

Section 17106-A(1), regarding the requirement of independent decision makers, states, in pertinent part:

> All hearing officers are independent decision makers and are authorized to make recommended final decisions in regard to matters that come before them, consistent with applicable statutes and rules…[and that] [t]he board shall accept the recommended decision of the hearing officer unless the recommended decision is not supported by the record as a whole… the…hearing officer has made an error of law or the decision exceeds the authority or jurisdiction conferred upon the hearing officer….

5 M.R.S. § 17106-A(1). In reaching a decision, the EDD, Hearing Officer and Board receive advice from the Medical Board. 5 M.R.S. § 17106(3). In particular,

> The medical board…shall review the file of an applicant for disability retirement and…[p]rovide a written report of its analysis of how the applicant's medical records do or do not demonstrate the existence of physical or mental functional limitations entitling an applicant to benefits….

5 M.R.S. § 17106(3)(D). These medical board memoranda exist "to inform the executive director and Board as to the medical board's view on the existence of a disability that would entitle an applicant to benefits." *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 25, 967 A.2D 676 (noting that the Medical Board serves as "an advisor" to the System). As such, Medical Board memoranda evaluating an

applicant's medical evidence may be considered as contrary medical opinion. *Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 28, 985 A.2d 501.

It appears that there is substantial evidence on the record as a whole supporting the Board's Decision. This is because the Board's Decision turns largely on findings of credibility, which are exclusively the province of the finder of fact and cannot be disturbed absent a lack of supporting evidence or an abuse of discretion. *Sprague v. Maine Unemployment Ins. Comm'n*, 544 A.2d 728, 732 (Me. 1988); *Estate of Siebert*, 1999 ME 156, ¶ 10, 739 A.2d 365. In particular, the Board's Decision implicitly found that Petitioner exaggerated the extent of her head injuries and the resulting difficulties, that Petitioner's recovery "plateau" was unlikely due to medical symptoms, that Petitioner's actual impairments were mild in nature, and that Petitioner was in no worse shape than she was since 2004, when she received exemplary performance reviews. Although there is certainly evidence supporting a finding that Petitioner is qualified to receive disability retirement benefits, the court does not find the Board's Decision committed errors of law, an abuse of discretion, was arbitrary and capricious, or not supported by substantial evidence on the record as a whole.

For reasons explained above, the entry will be:

The Maine Public Employee's Retirement System Board of Trustees Decision and Order of February 12, 2015, Appeal #2013-044 is AFFIRMED; PETITION denied.

Clerk may docket by reference.

18

Date: November 16, 2015

JUISTICE, SUPERIOR COURT

AP-15-14

19

| | | |
|---|---|---|
| Date Filed   3/11/15 | Kennebec<br>County | Docket No. AP-15-14         F |

Action: <u>Petition for Review</u>
     80C

**J. Marden**

| | | |
|---|---|---|
| Elizabeth Jalbert | vs. | MainePERS |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Gerard Conley, Jr., Esq.<br>465 Congress Street<br>Portland, ME  04101 | Christopher Mann, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

Date of Entry

| | |
|---|---|
| 3/13/15 | Petition for Review of Final Agency Action, filed 3/11/15. s/Conley, Esq. |
| 3/17/15 | Letter entering appearance for MainePERS, filed 3/16/15. s/Mann, AAG |
| 4/17/15 | Administrative Record and MainePERS Rule Chapter 702, filed 4/10/15. s/Emery, Appeals Clerk |
| 4/17/15 | Notice and Briefing Schedule issued.<br>Copy to Atty Conley, AAG Mann |
| 5/27/15 | Brief of Petitioner, filed 5/27/15. s/Conley, Esq. |
| 6/17/15 | Opposition to Rule 80C Petition, filed 6/12/15. s/Mann, AAG |
| 6/26/15 | Petitioner's Reply Brief, filed 6/25/15. s/Conley, Esq. |
| 7/2/15 | Oral argument scheduled 7/24/15 at 3:00.<br>Notice of Hearing sent to Atty Conley, AAG Mann |
| 7/31/15 | Oral argument not held on 7/24.  To be rescheduled. |
| 8/7/15 | Oral argument scheduled 8/20/15 at 3:00.<br>Notice of Hearing sent to Atty Conley, AAG Mann |
| 8/13/15 | Motion to Continue, filed.  s/Mann, AAG |
| 8/17/15 | ORDER, Marden, J.<br>The Court continues oral argument (now set for 8/20/15) until the next available date.<br>Copy to Atty Conley and AAG Mann |
| 10/9/15 | Oral argument scheduled 10/27/15 at 9:30.<br>Notice of Hearing sent to Atty Conley, AAG Mann |
| 10/28/15 | Hearing held 10/27/15, J. Marden presiding.<br>Courtroom 6.<br>Under advisement. |

11/16/15       DECISION, Marden, J.
The Maine Public Employees Retirement System Board of Trustees Decision and Order of February 12, 2015, Appeal #2013-044, is AFFIRMED.
Copy to Atty Conley and AAG Mann
Copy to repositories

11/16/15       Notice of removal of record sent to AAG Mann